WHITAKER & CO. v. CITY OF CARBONDALE et al.

No. 734.

District Court, E. D. Illinois.

March 6, 1944.

T. B. F. Smith, of Carbondale, Ill., and Frank E. Trobaugh, of West Frankfort, Ill., for plaintiff.

Charles E. Feirich and John K. Feirich, both of Carbondale, Ill., for defendants.

WHAM, District Judge.

This is a suit brought on July 26, 1943, by the owner and holder of certain special assessment bonds and vouchers issued by the City of Carbondale, bearing dates ranging from February 12, 1910 to October 1, 1912, seeking discovery, accounting and other relief against said City of Carbondale and certain of its officials who are made parties defendant. It appears that the bonds in question are part of issues of bonds which were issued under the provisions of the local improvement laws of Illinois to anticipate the collection of special assessments in connection with several paving districts in said City. All of the bonds and vouchers so issued were payable in annual installments. The bonds with latest maturities fell due from June 11, 1920 to June 1, 1922. As alleged in the complaint, the maturities of the bonds and vouchers held by plaintiff and payable out of various installments in the various districts ranged from June 15, 1910 to May 1, 1920. It is alleged in the complaint that the City of Carbondale became and was a trustee charged with certain active duties in connection with each of said paving districts, including the collection of said special assessments and paying out the funds as collected upon the bonds and vouchers so issued pro rata, pursuant to statute; that it has failed in all such duties and because of such failure has become liable for the payment of said bonds and vouchers; furthermore, that said City has collected some or all of the special assessments applicable to payment of said bonds and vouchers held by plaintiff but with exception of certain admitted payments on certain bonds it has failed to apply the money so collected to the payment of .the bonds of plaintiff though lawfully so applicable but has wrongfully converted such moneys to its own use or diverted to the payment of certain other bonds contrary to law.

Defendants admit the formation of said districts and the issuance of said bonds but deny that the City has failed to collect any moneys it could lawfully collect. They deny that the City, or any of them, at any time, wrongfully converted or diverted any of the moneys collected. They admit that certain vouchers and bonds held by plaintiff are not fully paid but deny any liability for such payment, deny any trust relationship to plaintiff, and deny that plaintiff is entitled to relief.

Defendants rely upon certain special defenses. The second special defense sets up constitutional limitations as to the bonds issued in districts wherein public benefits were assessed. The third sets up laches on part of plaintiff as a defense to all the asserted rights of the plaintiff. The fourth to the seventh, inclusive, set up various Illinois Statutes of Limitation. The seventh avers that more than ten years before this suit was commenced the City of Carbondale repudiated all trust or other obligations to plaintiff on said bonds, interest coupons and vouchers; that no right of action on any of them had accrued within ten years before this suit was commenced and all were barred by the Statute of Limitations, as provided in Sec. 17, Chap. 83, Ill. Rev.St. 1941.

By its reply plaintiff puts in issue each of said special defenses. By agreement, in order to simplify the issues, the case was tried before the court solely upon said special defenses. Certain facts were stipulated for the purpose of this hearing only. Depositions were submitted, witnesses heard, and exhibits introduced in evidence. The case was submitted and is now before the court for decision upon written briefs and arguments of counsel.

■ Upon the issues raised by the affirmative special defenses the burden of proof was on the defendants. Rule 8(c), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The proof is undisputed that at the time said paving districts were formed and special assessments were made against the City for public benefits the City was indebted far beyond its constitutional limits. There seems to be a question of fact upon which the evidence is not entirely clear nor fully developed as to whether or not the City has or has had money actually in its hands paid into it by the taxpayers under levy of assessments to pay said public benefits. If it now has or has had such money properly allocable to plaintiff's bonds but which it has wrongfully failed to pay on said bonds, the question as to whether the defense of constitutional limitation would be applicable to the extent of the money so collected may be debatable. Bank of Burlington v. City of Murphysboro, 7 Cir., 96 F.2d 899 at 904. Then, too, it is not clear, aside from the question just mentioned, whether the defense, if otherwise valid, is applicable to all the bonds held by the plaintiff to which the defense has been interposed or only pro tanto to all or part of them. It would seem better to let the second defense abide the trial on the merits, should the case eventually be tried on its merits.

The defenses of laches and statutory limitation presented by special defenses 3 to 7 are so closely intertwined that these defenses will be considered together. A disposition of these defenses necessitates a consideration of the evidence and the applicable law.

That the relationship between defendant City and the plaintiff as the owner and holder of special assessment bonds, coupons and vouchers issued by the City in connection with said paving districts was a trust relationship and that any funds actually collected by the City applicable to the payment of plaintiff's bonds and vouchers became and were trust funds in its hands for the benefit of the plaintiff is too well settled in Illinois to require discussion or extensive citation of authorities. Rothschild v. Village of Calumet Park, 350 Ill. 330, 183 N.E. 337; Village of Lansing v. Sundstrom, 379 Ill. 121, 39 N.E.2d 987. That the City as such trustee became liable to account to plaintiff for any funds, if any, collected which were allocable to plaintiff's bonds but which were not so paid but were diverted elsewhere is likewise well settled. Conway v. City of Chicago, 237 Ill. 128, 86 N.E. 619. Such trust relationship has been held to constitute an active, express trust. Village of Brookfield v. Pentis, 7 Cir., 101 F.2d 516 at 521.

Where a trust relationship and trust funds are involved the rule with reference to the defense of laches in a suit by the beneficiary to enforce the trust is stated in the Restatement of the Law, Volume on Trusts, § 219, as follows:

"(1) The beneficiary cannot hold the trustee liable for a breach of trust if he fails to sue the trustee for the breach of trust for so long a time and under such circumstances that it would be inequitable to permit him to hold the trustee liable.

"(2) The beneficiary is not barred merely by lapse of time from enforcing the trust, but if the trustee repudiates the trust to the knowledge of the beneficiary, the beneficiary may be barred by laches from enforcing the trust."

In the comments following the above quotation it is said that in determining whether the beneficiary of a trust is precluded by laches the court will consider a number of factors, including death of witnesses or parties. It is said that if witnesses or parties have died between the time when the breach of trust was committed and the time of suit, the suit may be barred by laches in a less time than it would otherwise be barred, since under such circumstances it may have become difficult as a result of the delay of the beneficiary in suing to ascertain the facts and to do justice. It is further said that the length of time necessary to bar a beneficiary from holding the trustee liable for breach of trust depends upon the circumstances and that in the absence of special circumstances the beneficiary is barred if the period of the Statute of Limitations applicable to actions at law in analogous situations has run.

Further comment appears on pages 629 and 630 of said volume as follows: "Although the beneficiary may be barred by laches from holding the trustee liable for breach of trust, he does not lose his interest in the trust property merely because of the lapse of time, however great; if, however, the trustee has repudiated the trust to the knowledge of the beneficiary and the beneficiary fails to bring suit, he may be barred by laches from enforcing the trust. Such repudiation need not be in specific words; it may consist of conduct on the part of the

trustee inconsistent with the existence of the trust."

The law of Illinois with relation to the defense of laches in cases involving trusts seems to be in accord with the rule laid down in the Restatement of the Law. Simpson v. Manson, 345 Ill. 543 at pages 553 to 556, 178 N.E. 250.

■ In view of the preceding authorities it becomes pertinent to determine whether the defendant has at any time repudiated its alleged trust and trust obligations to plaintiff.

From the pleadings, stipulations of fact and other evidence it appears that payments became due and bonds matured at various times between 1910 and 1920. After 1922 no money was collected or paid by the City in connection with any of the paving districts in question, including the obligations of plaintiff. Long prior to that time not only were many installments unpaid but plaintiff's predecessor claimed the City had failed in its duties and brought a mandamus suit in 1916 to enforce performance as to several of the bonds here involved. The City plead constitutional limitations and nonliability. This suit was dismissed by plaintiff without trial in 1923 for the reason that another suit to be filed in the federal court was contemplated. No such suit was brought. In 1921 the City passed Ordinance No. 557 providing for levy of a direct annual tax for twenty years of two mills on the dollar to be known as public benefit tax and the City collected the tax so levied but applied none of it to payment of any public benefits assessed in connection with any of the paving districts here in question. Plaintiff knew of these collections from the beginning and knew no part of them was being applied on plaintiff's bonds. There is no evidence that said Ordinance No. 557 was passed for the purpose of paying any of the public benefits in connection with the paving districts here in question. Further unsuccessful attempts were made by persuasion to collect upon the bonds, coupons and vouchers involved in this suit and in 1927 they were placed for collection in the hands of J. C. Smith, a widely experienced lawyer of Centralia, Illinois. He appeared at various times before the City Council at regular and special meetings in an effort to collect upon a compromise basis. He was informed by the Council that it had a written opinion from the City's attorney that the City was not liable upon the bonds, coupons or vouchers for various reasons and that all liability to plaintiff thereon was denied. Plaintiff's said attorney informed the Council that while he did not admit the City's nonliability he expected the Council to follow their lawyer's advice; that he desired to approach the problem from the standpoint of the City's moral obligation and its interest in preserving its credit and see if the entire claim of plaintiff might be settled on a compromise basis. Without retracting or modifying its position that it was under no legal liability or obligation the City Council considered this proposition and finally agreed to submit to the voters in a special election a proposal to issue funding bonds in the sum of $20,000 (less than fifty per cent of amount claimed by plaintiff) but with the understanding that if the proposition failed to carry the City was through and would do nothing further about plaintiff's claim. Plaintiff agreed to this proposition (except that it did not in any way admit City's nonliability or agree that it would not proceed further), the special election was duly called and held on November 26, 1929. The bond issue failed to receive the approval of the voters. Plaintiff's said attorney after some further efforts advised plaintiff to bring suit. He advised plaintiff of the difficulties to be expected in the suit and the chances of recovery. Plaintiff refused to authorize suit, and said attorney returned the bonds, coupons and vouchers to plaintiff and closed his file in the matter. No suit was brought to enforce payment until fourteen years later when this suit was filed in July, 1943. In the meantime, many records relied upon by the City were destroyed by the bank through which the assessments in question had been collected and many witnesses had died. After 1929 plaintiff continued efforts to collect by negotiating both in writing and in person from time to time with individual members of the Council and City officials but without success. The City at no time receded from its position it had taken and announced to plaintiff in 1929 that it was without liability to plaintiff.

From the foregoing, I draw the conclusions that the City of Carbondale repudiated all its obligations, trust or otherwise, to plaintiff and gave notice thereof to plaintiff not later than the year 1929.

There seems to be some doubt as to whether the five or the ten year Statute

of Limitation is applicable, if either. It is immaterial since the lapse of time after the City's repudiation, fourteen years, is long enough to constitute laches by whichever statute it is measured. Furthermore, more than twenty years had elapsed after the City had done anything toward the execution of the trust and after the obligations were past maturity, during all of which time suit could have been brought. Then, too, it should not be disregarded that plaintiff and its predecessors knew of many of the alleged defaults by the City upon which plaintiff now relies more than twenty-five years before this suit was brought. The City at no time misled plaintiff or otherwise prevented or dissuaded plaintiff or its predecessors from bringing suit.

It would appear that under the circumstances the plaintiff is barred by its own laches from recovery in this suit. Special defenses 3 to 7, inclusive, will be and are hereby sustained. Counsel for defendants may prepare findings, conclusions and decree pursuant hereto and present same, upon notice.