Marilyn Burns, Plaintiff-Appellee, v. William Goldammer, Otto Goldammer, James P. Flynn, Audrey Flynn, and Mark Collier, Doing Business as Gateway Recreation, Defendants-Appellants.

Gen. No. 48,595.

First District, Second Division.

November 15, 1962.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (Frederick W. Temple and Thomas D. Allen, of counsel), for appellants.

Fred Lambruschi, of Chicago (Herbert P. Veldenz and Vera E. Cuthbert, of counsel), for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court:

Plaintiff brought suit to recover damages for personal injuries sustained when she fell while bowling at Gateway Recreation, owned and operated by defendants. The court entered judgment on the jury's verdict for $13,000, from which defendants appeal, contending that the court should have directed a verdict in their favor and that the award of damages was excessive.

The accident occurred at about 11:00 p. m. on New Year's Day in 1955 while plaintiff and her sister were on a double date in the company of Phil Santoro, plaintiff's escort, and Salvatore Genualdi, who accompanied her sister, whom he later married. The foursome had dinner together and planned to attend a movie, but found the theatres crowded and decided instead to go bowling. After arriving at defendants' establishment they rented bowling shoes from an attendant and proceeded to the "alley" or "lane" assigned to them.

While plaintiff was making her first approach to the foul line, she was abruptly stopped, and fell heavily to the floor, landing on her head, left shoulder, and left side. Her companions came to her assistance and while so doing noticed a piece of gum on the alley near plaintiff's right foot. Plaintiff, her sister, and Salvatore Genualdi, all testified that the gum in question was flattened, dark and dirty except in one spot, apparently where plaintiff's foot had struck the gum and pushed

back the dirty surface, exposing the white interior of the gum. After the fall plaintiff was assisted to her feet and out of her bowling shoes by her companions, who noticed that there was a small piece of gum on the right shoe which matched the gum on the alley. Plaintiff was then taken to West Suburban Hospital where she was given emergency treatment for her severely dislocated left shoulder.

■ There is a wealth of cases in Illinois involving customers and patrons injured by slipping on foreign substances in stores and other public places, many of which are fully discussed in Donoho v. O'Connell's, Inc., 13 Ill2d 113, 148 NE2d 434 (1958), and Olinger v. Great Atlantic & Pacific Tea Co., 21 Ill2d 469, 173 NE2d 443 (1961). These cases outline the general principles of law involved. The proprietor owes a business invitee the duty of exercising ordinary care in maintaining the premises in a reasonably safe condition. Geraghty v. Burr Oak Lanes, Inc., 5 Ill2d 153, 125 NE2d 47 (1955). In Donoho v. O'Connell's, Inc., 13 Ill2d 113, 118, 148 NE2d 434 (1958), the court said:

> "[L]iability will be imposed where a business invitee is injured by slipping on a foreign substance on the premises if it was placed there by the negligence of the proprietor or his servants, or, if there is no showing how the substance got on the premises, if it appears that the proprietor or his servant knew of its presence, or that the substance was there a sufficient length of time so that in the exercise of ordinary care its presence should have been discovered. (Davis v. South Side Elevated Railroad Co., 292 Ill 378.) Thus, where the foreign substance is on the premises due to the negligence of the proprietor or his servants, it is not necessary to establish their knowledge, actual or constructive. (Pabst v. Hillmans, 293 Ill App 547); whereas, if the substance is on the premises through acts

85

of third persons, the time element to establish knowledge or notice to the proprietor is a material factor. Schmelzel v. Kroger Grocery and Baking Co., 342 Ill App 501."

█ In the case at bar there is no contention in the pleadings nor any proof that the gum was placed there by one of the defendants' employees. In fact defendants' night manager admitted that gum on the approaches, dropped there by bowlers, was a frequent problem. Accordingly, the only issue here presented is whether the gum on the approach to the alley had been there for a sufficient length of time to give defendants constructive notice of its presence.

As against the testimony of plaintiff's witnesses, heretofore set forth, defendants called George Morvay, their night manager. He testified as to the procedures employed in keeping the approaches clean. He stated that in 1955 it was the practice of the maintenance crew to buff the approaches to the alleys with steel wool once a day, during the hours from 1:00 a. m. to 9:00 a. m., and that prior to the start of league competition a porter gave the approaches a general sweeping and was on duty the remainder of the night to see that the premises were kept clean. This witness indicated, however, that on the date of the accident he had not yet been promoted to night manager, and that on Saturdays (January 1, 1955 being a Saturday) he was not present during the hours when cleaning up took place, and also that he was not present at the time of plaintiff's fall. He therefore had no direct knowledge of relevant conditions on the date of the accident. Although the defendants' records apparently included the names of cleaning employees working on the night in question, no such witnesses were called by the defense.

Plaintiff and her companions all testified that the gum in question was blackened and flattened. She counters the suggestion that the dirty condition of the

gum was caused by her own shoe by pointing to the testimony that a whitened skid mark appeared on the gum where her foot slid into it, corresponding to the gum found on her shoe. The jury might properly have concluded that the condition of the gum indicated that it had been present on the approach for a considerable period of time.

We think that this case must be distinguished from the many cases from other jurisdictions, cited by defendants, which hold that the wilted, torn, or dirty condition of vegetable matter does not provide evidence of constructive notice of the length of time it has been present on the floor of a defendant's premises. Such matter might well have been wilted or dirty before it was dropped. It might have been dirtied by the shoe of the injured plaintiff who slipped upon it, or might have been dirtied by a previous passer-by only a short time before the plaintiff's fall.

The jury might well have found that freshly expectorated gum would not so quickly become flattened or blackened, as plaintiff and her witnesses described it. Furthermore, we think that a jury might quite properly find that "ordinary care" of the approaches to a bowling alley demands more frequent inspection than do the common passageways of a retail store. Defendants' brief concedes that approach to the foul line of a bowling alley is terminated by a sliding motion. As heretofore stated, defendants' night manager admitted that gum on the approaches was a frequent problem. In view of this, it might be expected that falls would occasionally occur, absent a policy of frequent inspection and clean up. It follows that the length of time such foreign matter must be present on the approaches of a bowling alley in order to charge the proprietor with constructive notice of its presence is shorter than in the case of foreign matter found on the common passageways of a retail store, which caters to the casual visitor clad in street shoes.

Of course the condition of the gum, the time required to charge the defendant with constructive notice, or the time such gum was present on the approach are not matters capable of precise determination. Nevertheless, in view of the circumstances of the case and the nature of defendants' business, plaintiff made a sufficient showing of constructive notice to take the case to the jury for its determination. We therefore conclude that defendants' motion for a directed verdict was properly denied.

As the remaining ground for reversal, defendants urge that the jury's award of $13,000 was excessive. Plaintiff sustained a seriously dislocated shoulder. She testified that she "thought it was broken at the time. . . . My shoulder, the bone here [indicating] seemed like it was sticking out right here [indicating] and my arm just hung, was dead, like." At West Suburban Hospital, where she was taken for first aid, Dr. Wong gave her some medication to relieve the pain, manipulated and set her shoulder, placed her arm in a sling, had her lie down for awhile, and told her to see her family physician. She was then taken home, and on the following Monday she went to her physician, who sent her to Augustana Hospital for X-rays. She had diathermy treatments twice a week for about a month, and less regularly for a long time thereafter. Later she consulted several other physicians. Defendants emphasize the fact that only two of them were called as witnesses, but their absence in court was accounted for. Ultimately she was treated at Great Lakes Naval Hospital, where more X-rays were taken, and she was placed in traction. Her orthopedic specialist was of the opinion, based on the reading of X-rays, that the fall may have caused a separation of two vertebrae and resulted in recurrent pain in her arm. Defendants' specialist, also testifying from X-rays, disagreed with this conclusion. The resolution of this question and of the nature and extent of her in-

juries was properly left to the jury, and we think that the verdict rendered falls within "the necessarily flexible limits of fair and reasonable compensation." Barango v. E. L. Hedstrom Coal Co., 12 Ill App2d 118, 138, 138 NE2d 829 (1956).

The case was fairly tried, and we find no convincing reason for reversal. Therefore the judgment of the Superior Court is affirmed.

Judgment affirmed.

BRYANT, P. J. and BURKE, J., concur.