NAOMA WOLFE, Plaintiff-Appellee, *v.* BERTRAND BOWLING LANES, INC., a/k/a Bertrand Bowling Alley, *et al.*, Defendants-Appellants.

Second District (1st Division)    No. 73-405

Opinion filed July 13, 1976.—Rehearing denied August 5, 1976.

---

O'Brien, Hanrahan, Wojcik & Conniff, of Chicago, for appellants.

Steinberg, Polacek & Steinberg, of Chicago, for appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The plaintiff, who had an atrophied left leg as a result of polio, fell in the defendant's cocktail lounge, breaking her right leg. She contends that she slipped on a cellophane cigarette wrapper dropped on the carpet by a waitress clearing ashtrays. The defendants contend that she merely fell getting off a bar stool. The jury found for the plaintiff and awarded her $21,000 for which judgment was entered. On appeal, the defendants contend: (1) that the verdict is contrary to the manifest weight of the evidence; (2) that the court erred in the giving and refusal of instructions; (3) that the court erred in excluding certain expert testimony; and (4) that improper testimony and comments of counsel deprived the defendants of a fair trial. We find no reversible error and affirm.

On June 13, 1969, the plaintiff came into the defendants' cocktail lounge shortly after midnight and remained until closing. A friend of hers, Minnie Neargarder, worked there. During those next 1½ to 2 hours she was seated on a bar stool at the bar on the west (carpeted) side of the defendants' lounge which area was serviced by Miss Neargarder. She did not leave the bar stool during this period but had two short beers (she was not intoxicated) and listened to the band. To the left of her seat was a waitress station; in it was a plastic waste receptacle 2½ to 3 feet high located on the floor. While leaving the lounge she fell, suffering a fracture of the right femur. No one other than the plaintiff witnessed the actual fall, although at that time there were perhaps eight to ten customers in the lounge.

At the trial, the only witnesses were the plaintiff; Mr. Gluth, Mr. Lawrence and Mr. Bertrand, all employees and officers of the defendants; Mrs. Judith Linderholm, a former waitress of the defendants; and Dr. Creath, the treating physician. Although they were the first to reach the

plaintiff after her fall, neither LeRoy Twilliger, an acquaintance whom she knew because he had come to the lounge regularly, nor Minnie Neargarder testified.

During the whole time the plaintiff was seated at the bar, there were only eight to ten customers on the west side of the lounge. There were only two on that side just prior to closing. During the evening Minnie would clear the tables in her area and empty whatever was on her tray, dumping ash trays and garbage. In the last half hour before closing Minnie went by her perhaps a dozen times with trash and debris from the tables. No one else was in the area near the waitress station around closing. Miss Wolfe did not, however, see anyone drop a piece of cellophane. She was watching the band.

While she was seated at the bar, her feet reached the footrest. She testified that she was very careful getting off the stool. Because she had had polio, she always looked to see where she was stepping. When, however, she looked at the floor as she was leaving, she had difficulty seeing it. The lighting was dim. She denied that she fell off the bar stool.

Miss Wolfe took three or four steps after getting off the bar stool and fell in an aisleway where people could pass through going to the bowling alley or to the parking lot. Her left leg slipped on a single layer of clear cellophane the size of a package of cigarettes. (Right when she fell she looked down to see what it was—the cellophane was under her foot.) She fell some 2 feet from the waste container, on a darkened area of the carpeting. In this area there was other debris as well; including cigarette wrappers, cigarette butts, plastic stirrers and napkins. This area of debris was about 2 feet in width and length.

At the time of the fall she was wearing reasonably new tie shoes with low rubber heels and rubber soles. She had not had trouble walking with these shoes before on different types of surfaces.

The first persons to reach her were Minnie and LeRoy. They took her to St. Theresa's Hospital in her car. At no time did she tell Dr. Creath or anyone else that she fell off a stool. Dr. Creath at no time asked her what happened.

Miss Wolfe was under treatment, either in the hospital or at home until May 1, 1970. She has suffered permanent aftereffects because of the injury to her right leg. She tires easily when walking and she can no longer perform many of the activities she could before.

Dr. Creath, an orthopedic surgeon, testified for the plaintiff. He treated her in June, 1969, and thereafter. He was actually the second doctor to see her and she had already been placed in bed at that time. She had a fracture of the right femur. According to his medical report which was made on September 4, 1969, approximately 3 months after the accident, she had apparently (the word "apparently" was his) fallen from a seat. He

did not know where he got the history. Occasionally he will see the emergency record or actually talk with the patient. This comment could not have been obtained from the emergency record since it does not say this and there is nothing in his notes to indicate where the history did come from. In his opinion, the injury could have made the extremity weaker than it was before, could have made it slightly shorter and could have aggravated the weakness in her hip and right ankle. The weakness in her right hip and ankle and the narrowing of the musculature could make her less well. He did not believe her right leg would improve.

Neither Mr. Gluth nor Mr. Lawrence actually saw the accident; rather they saw her on the floor with a group of people around her. Both testified that they did not see any debris on the floor near where they saw Miss Wolfe. However, Mr. Lawrence did not look over in the direction of the waste receptacle to see if there was any debris on the floor. Mr. Gluth, who was the bartender, did not interrupt his cleaning-up at the time of the accident and did not go over to that area. He only passed by the area where she had fallen when he went home about 25 minutes later. Then he did not notice anything but he did not look specifically at the floor and could not say with any certainty whether anything was on the floor when he walked out. The maintenance crew comes in sometime after 2 a.m. after the customers have gone home and vacuums.

Both witnesses agreed that the lights were turned up bright at 2 a.m. which was closing time. Mr. Gluth acknowledged that a year and a half after the accident when he was not employed by the defendants he had given them a written statement that the lights were dim. He had changed his mind after he discovered at what time the accident happened; by this time he was employed by Mr. Bertrand. However, according to Mr. Gluth, even when the lights were on dim one could see the entire west side of the lounge area floor.

Mr. Gluth, Mr. Lawrence and Mr. Bertrand all agreed that the waitresses were supposed to keep the area clean. They were to keep an eye out for any debris and pick it up if it was seen on the floor. Likewise they were supposed to pick up any debris around the receptacle. Part of Mr. Lawrence's duties were to walk through the lounge and see if there was any debris on the carpeting.

Mr. Lawrence also testified that the west side of the lounge was carpeted. The carpeting was dark green and there was a darkened area at the waitress station that extended out a couple of feet. He did not know why it was darkened. It could be traffic.

Mrs. Judith Linderholm, a former employee of the defendants, testified for the defendants. The night of the accident she had worked on the east side of the lounge and Minnie on the west side. She first became aware Miss Wolfe had fallen when she sensed a general commotion. This was

around closing time which would be around 2 a.m. At that time the witness had been cleaning up. The general practice was to clean off the tables, empty the ash trays and pick up the glasses. Mrs. Linderholm was under the impression that the commotion was simultaneous with the lights being turned up—it all came back in her mind as if it had all happened at once but she did not remember for sure. There is no set pattern as to whether the lights are still dim when the customers are cut off from drinks or the waitresses are cleaning up during closing time. It varies.

When Mrs. Linderholm heard the commotion, she went to see what happened. By the time she arrived, Miss Wolfe had been placed in a chair. Subconsciously, she must have observed the floor near where Miss Wolfe was seated because part of her job was to be on the lookout for debris and she did not see anything on the floor. She did not however look at the floor specifically with the idea of looking for something on it nor did she look in the area of the waste receptacle.

The defense also called Mr. Perrine, a physicist who has done coefficient of friction testing. He had made certain tests using a piece of leather, and a sample of carpet obtained from the bowling alley, some vinyl tile, hardwood flooring and some cigarette cellophane wrapping. The court, however, sustained plaintiff's objection to questions as to how the coefficient of friction in regard to the carpeting and the cellophane compared with the coefficient of friction in regard to the hardwood floor and the vinyl floor and whether that coefficient was higher or lower.

At the close of all the evidence, the court denied the defendants' motion for a directed verdict, closing arguments were made and the jury found for the plaintiff and against the defendants, assessing the plaintiff's damages at $21,000, for which judgment was entered and this appeal followed.

The defendants' first contention is that the verdict is against the manifest weight of the evidence. This necessarily turns upon the quantum of proof required in such a case as this.

■■ The leading case in Illinois is *Donoho v. O'Connell's, Inc.* (1958), 13 Ill. 2d 113, 148 N.E.2d 434, where the plaintiff slipped on a grilled onion on the floor in the defendant's restaurant under circumstances remarkably similar to those in the case at bar, including the facts that, although the foreign matter was related to the defendant's operation of the restaurant, no one testified specifically as to how it came to be where it was. In reversing the appellate court's judgment directing that judgment notwithstanding the verdict be entered for the defendant, our Supreme Court, at pages 119, 122-25, said:

> "Where the foreign substance upon which the customer slipped was unrelated to the proprietor's operations, the Illinois courts and those of other States have directed verdicts, in the absence of

actual or constructive notice, since under such circumstances no inference could be drawn that the substance was more likely to have been dropped by defendant's servants than by third persons. * * *.

* * *

Where, however, in addition to the fact that the substance on the floor was a product sold or related to defendant's operations, the plaintiff offers some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of the defendant, from which it could be inferred that it was more likely that defendant or his servants, rather than a customer, dropped the substance on the premises, courts have generally allowed the negligence issue to go to the jury, without requiring defendant's knowledge or constructive notice. Moreover, from our review of the cases, there appears to be a diminishing reluctance by courts to accept such circumstantial evidence to establish that the foreign substance came on the floor through defendant's negligence. 31 N.C.L. Rev. 134.

In *Pabst v. Hillmans*, 293 Ill. App. 547, where plaintiff slipped on a string bean near the vegetable bin which was brimming over, the Illinois court drew the inference that the bean was on the floor through the negligence of defendant's servants, and allowed the negligence issue to go to the jury. * * *

* * *

In *Wood v. Walgreen Drug Stores*, (Mo. App.) 125 S. W. 2d 534, which bears a close resemblance to the case at bar, the Missouri court allowed the negligence issue to go to the jury where plaintiff slipped on a piece of moist bread on the floor of defendant's restaurant, on the ground that the condition was created by defendant's employee. Plaintiff there testified that the floor was clean around the table when she sat down, that there were fragments of bread upon the table, that the waitress in clearing the table permitted certain fragments to fall upon the floor, that no one other than the waitress had passed by the table while plaintiff was seated there, and that as plaintiff was leaving she slipped on a piece of moist bread, such as had been on the table.

* * *

* * *it is evident that this is not a case where the foreign substance on which plaintiff slipped was unrelated to defendant's operations, as in *Davis v. South Side Elevated Railroad Co.* and *Antibus v. W. T. Grant Co.*, cited by defendant, for grilled onions were frequently included with hamburgers served by defendant,

and hamburgers had been eaten at the stand-up table. Nor is this a case where plaintiff has merely offered evidence of slipping on a fragment of a product sold by defendant, as in *Jones v. Kroger Grocery and Baking Co.* and *Schmelzel v. Kroger Grocery and Baking Co.*, and similar cases in other jurisdictions, also cited by defendant. On the contrary, plaintiff has not only presented evidence that the foreign substance was closely related to defendant's operations, as stressed in the *Kellermeyer* case, and as deemed determinative of defendant's negligence in *Fox v. Schechter & Co.*, but has presented additional circumstantial evidence that the onion ring on which she slipped was located beside the stand-up table cleared by the bus boy, that under the bus boy's practice of clearing up the tables food particles could drop to the floor, and testimony that after the bus boy cleared the stand-up table, no one else ate there or was in that area for some 15 minutes before plaintiff fell. Proof of the smear on the sole of the left shoe when it was examined at the hospital is corroborative of plaintiff's claims. From this circumstantial evidence, it could be reasonably inferred that it was more likely that the onion ring was on the floor through the act of defendant's servant, than by the acts of any customer."

The case of *Olinger v. Great Atlantic & Pacific Tea Co.* (1961), 21 Ill. 2d 469, 173 N.E.2d 443, cited and relied upon by the defendants, where the Supreme Court upheld an Appellate Court judgment reversing a judgment for the plaintiff, does not vary and, on the contrary, affirms the *Donoho* rule. There the court, at pages 475-76, said:

" 'Where, however, in addition to the fact that the substance on the floor was a product sold or related to defendant's operations, the plaintiff offers some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of the defendant, from which it could be inferred that it was more likely that defendant or his servants, rather than a customer, dropped the substance on the premises, courts have generally allowed the negligence issue to go to the jury, without requiring defendant's knowledge or constructive notice.' *Donoho v. O'Connell's, Inc.*, 13 Ill. 2d 113 at 122.

\* \* \* Since the evidence failed to establish that the substance was related to defendant's operations, no inference could be drawn that the substance was more likely to have been dropped by defendants' servants under the *Donoho* rule. Having failed to show that the substance was related to defendants' business, it is unnecessary for us to decide whether plaintiff offered other evidence which would permit an application of the Donoho rule."

In *Perminas v. Montgomery Ward & Co.* (1975), 60 Ill. 2d 469, 328 N.E.2d 290, referring to *Donoho*, the court, at page 472, said:

> "* * * In that case, this court held that where, as here, the substance on the floor is related to defendant's business and 'the plaintiff offers some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of the defendant, from which it could be inferred that it was more likely that defendant or his servants, rather than a customer, dropped the substance on the premises' (13 Ill. 2d at 122), then plaintiff has established negligence without showing that defendant had knowledge or constructive notice that the item was on the floor. * * *."

For recent appellate court decisions citing, following and quoting from *Donoho*, see *Marz v. Jewel Tea Co., Inc.* (1970), 121 Ill. App. 2d 209,218, 220, 257 N.E.2d 548; *Papadatos v. National Tea Co.* (1974), 21 Ill. App. 3d 616, 618, 316 N.E.2d 83; *Dunlap v. Marshall Field & Co.* (1975), 27 Ill. App. 3d 628, 631, 327 N.E.2d 16; and *Blake v. Dickinson* (1975), 31 Ill. App. 3d 379, 332 N.E.2d 575.

The defendant argues that cellophane is not like the onion in *Donoho*, the thin oil in *Olinger*, the gum in *Burns v. Goldhammer* (1962), 38 Ill. App. 2d 83, 186 N.E.2d 97, the banana peel in *Antibus v. W. T. Grant Co.* (1938), 297 Ill. App. 363, the vegetable leaf in *Mraz*, but, as we view it, a slip on a piece of cellophane or paper may also be as harmful, however, and equally may give rise to liability on the part of the negligent proprietor. (*Ashburn v. F. W. Woolworth Co.* (1938), 296 Ill. App. 639, 16 N.E.2d 200 (abstract opinion) (green waxed paper); *Arden v. Chicago Transit Authority* (1967), 89 Ill. App. 2d 214, (debris "soft" and "wet" like part of a newspaper); *Goldsmith v. Mills* (1955), 130 Cal. App. 2d 493, 279 P. 2d 51 (inspection sales slips).) As the latter case remarked "it is logical to infer that the papers made the footing more slippery than the normal floor surface, thereby causing the fall."

■■ In the light of *Donoho* and the later cases applying it, we conclude and hold that the evidence in this case (which we shall not repeat here) demonstrates that the cellophane cigarette wrapper upon which the plaintiff slipped and fell was a product related to the operation of the defendants' lounge and that the proof as to the cleanup operations by the defendants' waitresses was sufficient to justify the inference that it was more likely that the defendants' servants, rather than another customer, dropped the wrapper in the path of trips from tables to the disposal container. We therefore hold that the verdict is not contrary to the manifest weight of the evidence.

■■ This brings us to the defendants' contention that, regardless of the sufficiency of the evidence, the judgment must be reversed and the cause

remanded for another trial because the jury was improperly instructed.

The defendants first contend that the court committed reversible error in refusing to give their tendered instruction No. 8, which not only was not an IPI instruction but was long, complex and argumentative and included the conclusion that:

> "For the plaintiff to recover herein, she must further prove that the substance on the floor, which she contends caused her to fall, created an unsafe or dangerous condition."

We conclude and hold that the trial court did not commit reversible error in refusing to give this tendered instruction and sticking to the IPI.

■■ The defendants also contend that the trial court committed reversible error in giving to the jury Plaintiff's Instructions Nos. 11 (IPI No. 10.04); 16 (IPI No. 34.04); 19 (IPI No. 20.01); and 24 (IPI 30.01-2-3-4-5-6-7). These are not only all IPI, but the defendants are not in a position to complain of the giving of these instructions because the conference on instructions has not been abstracted so as to establish that specific objections were made to each of these instructions. As the court, in *Jackson v. Gordon* (1962), 37 Ill. App. 2d 41, 184 N.E.2d 805, in affirming the judgment, said at page 45:

> "* * *We feel constrained to point out, however, that, since the trial conference for the settling of instructions has not been abstracted, it has, therefore, not been shown to this court that the necessary specific objection to the complained-of instruction was made at that time. (*Taylor v. Elgin*, J. & E. Ry. Co., 33 Ill. App. 2d 64, 77, 178 N.E.2d 704; *Thompson v. Chicago & E. I. Ry. Co.*, 32 Ill. App. 2d 397, 401, 178 N.E.2d 151; *Greenlee v. John G. Shedd Aquarium*, 31 Ill. App. 2d 402, 411, 176 N.E.2d 684; and cases therein cited.) The point is, therefore, not preserved for our consideration, as a court of review is not required to search the record to find grounds for reversal, even though it may do so to affirm. (*Richman Chemical Co. v. Lowenthal*, 16 Ill. App. 2d 568, 571; and numerous other decisions to the same effect.)"

Another holding to the same effect is *Backlund v. Thomas* (1963), 40 Ill. App. 2d 8, 189 N.E.2d 682, where, in affirming the judgment, the court, at page 11, said:

> "Counsel for defendant assigns as error, the giving of plaintiff's instruction #16. The conference on instructions is not abstracted or referred to in the abstract. The abstract does not disclose any objection to this instruction by counsel for defendant. Claimed error in giving instructions is not presented for review where the conference on instructions is not abstracted or where the abstract fails to show objections to the instructions. *Kotowsky v. Cook*, 29 Ill. App. 2d 116, 172 N.E.2d 502."

To the same effect, see *Saunders v. Schultz* (1959), 22 Ill. App. 2d 402, 414-15, 161 N.E.2d 129; *Denenberg v. Prudence Mutual Casualty Co.* (1970), 120 Ill. App. 2d 68, 71, 256 N.E.2d 71; *Mitchell v. Toledo, Peoria & Western R. R. Co.* (1972), 4 Ill. App. 3d 1, 3, 279 N.E.2d 782.

We therefore conclude that the defendants are in no position to complain of the giving of these instructions and we do not consider them.

We therefore find no merit in the defendants' contention that the jury was improperly instructed.

The defendants next contend that the court committed reversible error in sustaining the plaintiff's objections to two questions they proposed to put to one Eugene Perrine, a physicist called by them. He had made certain tests using a piece of leather, and a sample of carpet obtained from the bowling alley, some vinyl tile, hardwood flooring and some cellophane cigarette wrappers. The defendants' attorney then put the following questions to him, to which the court sustained the plaintiff's objections:

> "How did the coefficient of friction in regard to the carpeting and the cellophane compare with the coefficient of friction in regard to the hardwood floor and the vinyl floor?"

> "Well, was the coefficient of friction in regard to the cellophane on the carpeting you tested higher or lower than the coefficient of friction in regard to hardwood floors, vinyl floors and other standard floor surfaces?"

■■ It is not clear for what purpose this testimony was offered. If it was to show that the accident could not have occurred in the way the plaintiff testified that it did, then the testimony was properly excluded since the sequence of events was fully testified to by the plaintiff as an eyewitness and the facts were not such that they required the aid of expert testimony for comprehension. (*McGrath v. Rohde* (1970), 130 Ill. App. 2d 596, 265 N.E.2d 511, *aff'd*, 53 Ill. 2d 56, 289 N.E.2d 619.) If instead, it was offered to prove that the cellophane could not cause the plaintiff to slip and fall, then the evidence was properly excluded since it was not shown that the materials used in the tests were similar to those on which the plaintiff fell (*Hammer v. Slive* (1962), 35 Ill. App. 2d 447, 183 N.E.2d 49) or that the expert was familiar with the particular carpeting on which she fell (see *People v. Perry* (1974), 19 Ill. App. 3d 254, 311 N.E.2d 341). *Skalon v. Manning, Maxwell & Moore, Inc.* (1970), 127 Ill. App. 2d 145, 262 N.E.2d 146, and *Blue v. St. Clair Country Club* (1956), 10 Ill. App. 2d 151, 134 N.E.2d 540, cited by the defendants, while holding that the dissimilarities in conditions did not destroy the competency of the testimony under the particular circumstances, are not in disagreement with these principles. In *Skalon*, the experiment was made to determine

the strength of a chain. The court never said that the chain did not have to be similar to the one involved in the accident and indeed it was the same type. Likewise *Blue v. St. Clair Country Club* involved the propriety of expert testimony as to the wind velocity needed to lift a beach umbrella of a specific size and weight; there was no suggestion that the dimensions of the beach umbrella were irrelevant. Yet the defendants here contend that the testimony was relevant and informative without showing the nature and condition of the carpeting used. The court will take judicial notice of the fact that there are different types of carpeting and that worndown carpeting is different from new carpeting. Paper on top of one type may cause a fall more easily than paper on top of another.

In addition the jury was quite competent from its own experience to decide if the cellophane could have been the cause of the plaintiff's fall. We therefore conclude and hold that the court properly sustained objections to these two questions.

This brings us to the defendants' final contention that certain statements of the plaintiff as to her financial circumstances and personal activities and certain remarks by her counsel during closing arguments were so prejudicial as to deprive the defendants of a fair trial.

■■ We have examined this record with care and conclude that all of such statements and remarks were either not objected to at the time, or objections were promptly sustained, or they were not really improper or they were not so materially prejudicial as to warrant our reversal because of them. *Bruske v. Arnold* (1968), 100 Ill. App. 2d 428, 241 N.E.2d 191, *aff'd*, 44 Ill. 2d 132, 254 N.E.2d 453; *Lindroth v. Walgreen Co.* (1949), 338 Ill. App. 364, 87 N.E.2d 307, *aff'd*, 407 Ill. 121, 94 N.E.2d 847; *La Belle v. Brown* (1964), 46 Ill. App. 2d 87, 196 N.E.2d 389 (abstract opinion).

We are further of the opinion that to discuss each such remark or comment in this opinion would not only unduly prolong it but would have no precedential value.

The ultimate question on review is not whether the trial was scrupulously free from error, but whether there was error which operated to the substantial prejudice of the appellants or unduly affected the outcome. (*Bruske v. Arnold* (1968), 100 Ill. App. 2d 428, *aff'd*, 44 Ill. 2d 132, 254 N.E.2d 453; *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769.) Applying that test here, we find no reason to disturb the judgment.

Affirmed.

GUILD, P. J., and SEIDENFELD, J., concur.