CAROL DIVER *et al.*, Plaintiffs-Appellees, *v.* THE VILLAGE OF GLENCOE, Defendant-Appellant.

First District (5th Division)    No. 77-1445

Opinion filed June 16, 1978.—Supplemental opinion filed on denial of rehearing September 8, 1978.*

---

* A second supplemental opinion, filed October 20, 1978, appears at page 1052.

G. Kent Yowell, of Northbrook (Littlejohn, Glass & Yowell, of counsel), for appellant.

Herbert Lesser and Willard J. Lassers, both of Chicago, for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiffs, Carol Diver and Helen Sutton, brought this action seeking both a declaration that defendant held certain of their funds under an express trust and an accounting of such funds. Defendant thereafter filed a counterclaim for costs under section 41 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 41). Judgment was entered in favor of plaintiffs in the original action, and defendant's counterclaim was dismissed. On appeal, defendant presents the following issues for review: (1) whether the judgment in the original action was against the manifest weight of the evidence; (2) whether the original action was barred by the equitable doctrine of laches; and (3) whether the trial court erred in dismissing its counterclaim.

The record discloses that in 1927, to enable it to make certain local improvements, defendant sold bonds in a series of ten installments known as warrant 264. The bonds were to be repaid through the collection of special asessments against property benefiting from such improvements. These assessments were levied in ten installments, and the bonds issued in relation to each installment were to be paid from assessments collected under that installment's levy. Subsequently, defendant altered the assessments levied so that in the first five installments the amount of the assessments exceeded the amount of bonds issued but were less than the amount of bonds issued in the last five installments. However, when viewed as a whole, the warrant 264 assessments totaled $76,426.29, which exceeded by $4,465.41 the total number of bonds and vouchers[1] issued.

Diver held bonds related to installments 4, 5 and 6 and Sutton held bonds related to installments 5, 8 and 9—all of which had matured prior to January 1, 1937, and in the succeeding years defendant made partial payments to prior owners of the same bonds.

In 1954, defendant employed an accountant to compute a pro rata payment schedule by which the amounts actually collected under warrant 264 could be distributed in final settlement to the bondholders. Pursuant to this schedule, the prior owners of the bonds now held by plaintiffs received their last partial payments of those bonds in 1955 and 1957. With those payments, defendant sent letters to such holders, which stated in pertinent part:

"Enclosed herewith * * * is a partial but final settlement on the bonds and coupons that you recently turned in for collection.

Since delinquent taxes have been satisfied through foreclosure case proceedings no further distribution is anticipated and therefore these bonds and coupons should have been cancelled

---

[1] Vouchers rather than bonds were issued for the first installment.

with this payment. However, they were not cancelled but are being returned to you according to your instructions."

Despite the note of finality in the above language, the bonds were returned stamped with the following provision:

"PARTIAL PAYMENT
[date inserted]
Amount of Payment $ [amount of partial payment inserted].
Balance to be paid on further collections and on notice given by Treasurer $ [amount of balance inserted]."

As recently as 1975, another bondholder was paid a pro rata payment in the same manner under the 1954 schedule.

Plaintiffs' suit alleged that defendant had commingled and wrongfully diverted special assessment collections so that it, in fact, had funds on hand with which to pay them a larger pro rata share. At trial, each side called accountants experienced in municipal accounting who testified to alternative computations of the amount of assessments collected in each installment as follows:

|  |  | Plaintiffs' Accountant | Defendant's Accountant |
|---|---|---|---|
| 1st | Installment | 10,084.98 | 10,001.99 |
| 2nd | Installment | 9,681.40 | 9,677.59 |
| 3rd | Installment | 3,798.98 | 3,554.25 |
| 4th | Installment | 3,911.06 | 3,640.08 |
| 5th | Installment | 3,800.32 | 3,730.80 |
| 6th | Installment | 7,089.72 | 3,986.97 |
| 7th | Installment | 3,734.13 | 3,385.08 |
| 8th | Installment | 4,026.48 | 3,432.54 |
| 9th | Installment | 3,483.90 | 3,462.22 |
| 10th | Installment | 3,493.97 | 3,370.61 |

Plaintiffs' accountant accepted the collection computations of defendant's accountant for installments one through five, except that he did not deduct rebates of $61.29 in installments two through four. Commencing with installment six, plaintiffs' accountant increased his computation of collections by the amount the bonds issued were in excess of the assessment levied. Specifically, plaintiffs' accountant added $1,227.96 as the amount which should have been but was not levied and collected in installment six. Moreover, he inadvertently duplicated such procedure by again adding $1,227.96 to the amounts collected and treated cancelled bonds totaling $646.86 as a cash collection. Therefore, defendant's accountant computed the actual amount of cash collections pertaining to installment six as $3,986.97 rather than $7,089.72, as found by plaintiffs' accountant.

Beyond the discrepancies noted in the calculation of the amount of cash collections realized by defendant, the controversy at trial centered upon how the collected funds were disbursed. In this regard, it appears that a general audit of defendant's accounts for the year ending February 28, 1930, indicated that all disbursements were in order; however, a special audit in 1931 revealed thefts, forgeries and embezzlement perpetrated by defendant's deputy clerk. Those auditors reported that they could not say that all the irregularities of the deputy clerk were uncovered and that it would be too costly to ascertain their precise amount. The deputy clerk himself estimated the extent of the irregularities at $30,000, which amount he turned over to defendant to avoid prosecution. Approximately $3,000 of this money was used to reimburse warrant 264 as reparation for the proceeds received by the deputy clerk under forged bonds. With reference to the integrity of warrant 264 funds beyond the discovered forgeries, defendant's accountant could not explain the disbursement of $1,710.09 from installment one and $1,014.24 from installment two to a suspense account[2] which was used as a depository for the remainder of special assessment funds after all of the bonds and coupons related to a particular improvement were retired. Neither could he explain disbursements of $550 and $2,188.17 from installment one, which he had treated as coupon interest but which had not been so labeled in defendant's records and which exceeded the amount of coupon interest that could legally be charged against installment one.

Regarding the treatment of each installment as a distinct entity, plaintiffs' accountant observed that excess funds from earlier installments had been rolled over to cover deficits in later installments at least to the extent that defendant's records disclosed $4,700 in installment three bonds were paid in full, although only $3,554.25 was collected from installment three assessments. In addition, defendant's accountant testified that in compiling the 1954 payment schedule, he treated the funds collected in relation to warrant 264 as a unit to equalize payment to all bondholders disregarding the individual installments to which such bonds related.

The trial court found that by use of the suspense account, defendant had diverted and commingled warrant 264 funds with those from other special assessment accounts; that plaintiffs are equitably entitled to pro rata distribution of all monies collected by defendant in relation to warrant 264; that defendant's letters addressed to plaintiffs' predecessors in interest repudiated its obligation as trustee; but that defendant reinstated its position as trustee by making payments on 264 bonds in 1975. Based upon its further finding as to the amount of principal and interest due and owing each plaintiff, the trial court entered judgment in

---

[2] The funds deposited in this account had been invested in interest bearing securities so that a substantial sum of interest had been accumulated.

favor of Diver in the amount of $7,592.84 and in favor of Sutton in the amount of $7,993.52.

OPINION

Defendant first contends that the trial court's judgment was against the manifest weight of the evidence. Its position is that certain errors in the computations of plaintiffs' accountant require a reversal and remandment of this cause so that the amounts due plaintiffs, if any, can be recomputed. We cannot agree.

■■■ As trustee of special assessment funds for the benefit of the bondholders, a municipality is liable to the extent of the funds actually collected (*City of Alton v. Foster* (1904), 207 Ill. 150, 69 N.E. 783, *overruled on other grounds, Climax Tag Co. v. American Tag Co.* (1908), 234 Ill. 179, 84 N.E. 873), and such liability extends to funds collected but wrongfully diverted (*Conway v. City of Chicago* (1908), 237 Ill. 128, 86 N.E. 619). However, where a surplus exists in one installment, a municipality may choose to apply such funds to deficits in subsequent installments. (Ill. Rev. Stat. 1927, ch. 24, par. 216.) But when a bondholder has shown that the municipality collected the money applicable to the payment of his bonds and has not paid them, he has met the burden imposed upon him and is entitled to a judgment awarding him a ratable share of the funds collected unless the municipality shows a valid defense. *Rothschild v. Village of Calumet Park* (1932), 350 Ill. 330, 183 N.E. 337.

■■■ Here, defendant's accountant testified that in preparing the 1954 payment schedule he treated warrant 264 as a unit to equalize the pro rata payments to all bondholders rather than to determine pro rata payments upon the amount collected in the installment to which each bond related. Also, it is apparent that excesses in earlier installments were used to cover later deficits from the fact that $4,700 in installment three bonds were paid in full although that installment produced only $3,554.25 in revenues. Moreover, a municipality has a limited number of choices regarding any surplus collections: (1) it should refund the excess to the taxpayers; or (2) it may, if it so chooses, apply the excess to the same or a different improvement which would benefit the same property. (Ill. Rev. Stat. 1927, ch. 24, pars. 185, 216. See generally *Conway v. City of Chicago; City of Alton v. Foster.*) In the instant case, defendant has failed to show that it refunded to the specially assessed taxpayers any excess of collections over bond liability in the early installments nor did defendant establish that it applied any excess to different improvements benefiting the same property and, as the procedures employed by defendant evidence its application of any early excess to later deficits relating to the same improvement, we believe the trial court did not err in finding that plaintiffs were entitled to benefit from warrant 264 collections as a whole

rather than being limited, as defendant argues, to the amounts collected in the installments to which their bonds related.

Defendant contends that the accounting methods employed by plaintiff erroneously created surplus funds over and above the amount actually on hand at the time the 1954 schedule was compiled. Specifically, it complains that plaintiffs' accountant disallowed disbursements of $2,188.17 and $550, made mathematical errors, included amounts which were not actually collected, and distorted the effect of bond cancellations. For the reasons stated below, we cannot say that the trial court erred in awarding plaintiffs' ratable shares of amounts in excess of those listed in the 1954 schedule together with accrued interest.

First, the testimony showed that defendant's accountant considered disbursements of $2,188.17 and $550 from installment one collections as coupon interest, although these entries in defendant's records were not so labeled. Moreover, were these amounts to be considered as interest, the amount of interest legally chargeable against warrant 264 bonds for one year would be exceeded. In addition, defendant could give no reason why $1,710.09 from installment one and $1,014.24 from installment two were diverted to the suspense account. These funds, along with funds from other sources, were placed in interest-bearing securities rather than being used as a rebate to warrant 264 taxpayers or as capital to finance the same or another improvement for the property benefited by warrant 264. We believe that plaintiffs have established that these funds were collected for the benefit of warrant 264 bondholders but were not paid to them.

Second, regarding the errors in the computations of plaintiffs' accountant, the evidence shows that for installments six through 10, he erroneously included amounts which should have been but were not collected and incorrectly added the same amount twice. Defendant asserts that these were also errors of the trial court as it accepted without change or alteration the computations of plaintiffs' accountant. Our review of the record, however, reveals that the trial court took copious notes regarding defendant's assignments of error and it directly questioned defendant's accountant whenever his criticisms of plaintiffs' computations were not clearly stated. Defendant has failed to excerpt or to cite with specificity any portion of the record in support of its assertion that the trial court failed to correct such erroneous computations in its determination of the amount of plaintiffs' ratable shares. Therefore, to reverse this cause on this ground would require us to search the voluminous record—which we are not required to do. *Wolfe v. Bertrand Bowling Lanes, Inc.* (1976), 39 Ill. App. 3d 919, 351 N.E.2d 313; *Mitchell v. Toledo, Peoria & Western R.R. Co.* (1972), 4 Ill. App. 3d 1, 279 N.E.2d 782.

Third, we would note further that defendant contends plaintiffs'

accountant distorted the amounts available to pay bondholders by its treatment of bonds cancelled after partial payment was tendered to the holders and of bonds cancelled in payment of the holder's assessment liability. Defendant attempted to prove this distortive effect by posing a hypothetical question to plaintiffs' accountant, but the question and response were stricken. On appeal, it does not argue that the striking of the hypothetical was error, and in the trial court it failed to show such a distortive effect by any other means. Consequently, even if the trial court did not consider such procedures as distortive or failed to adjust its computations, as defendant suggests, its action was not erroneous. The record also discloses that defendant deposited the funds from various special assessments, including warrant 264, into the suspense account. Defendant's audit of February 1976 revealed that its total liability on all special assessments, bonds and coupons was $78,412.38; whereas, the balance in the suspense account at that time was $127,926.31, all of which came from special assessment funds and interest from the investment of those funds. This total amount was more than enough to pay all outstanding special assessments with interest.

■■ For the reasons stated, it cannot be said that the judgment appealed from was against the manifest weight of the evidence.

Defendant next contends that plaintiffs' cause was barred by the equitable doctrine of laches. Again, we must disagree.

■■ As noted above, a municipality which issues local improvement bonds is a trustee of special assessment funds collected for the benefit of the bondholders. (*Village of Lansing v. Sundstrom* (1942), 379 Ill. 121, 39 N.E.2d 987.) "The beneficiary is not barred merely by lapse of time from enforcing the trust, but if the trustee repudiates the trust to the knowledge of the beneficiary, the beneficiary may be barred by laches from enforcing the trust." (Restatement (Second) of Trusts §219(2) (1959); see also *Whitaker & Co. v. City of Carbondale* (E.D. Ill. 1944), 55 F. Supp. 72.) Such a defense, however, is available only where the trustee shows a plain, strong and unequivocal renunciation; *i.e.*, declines to account to the beneficiary, takes trust income for his own purposes or sets himself up as the owner of the trust capital, and brings home the knowledge of such treachery to the beneficiary as concealment weighs heavily against the trustee. *Lesser v. Village of Mundelein* (1975), 36 Ill. App. 3d 433, 344 N.E.2d 29.

■■ Here, in 1955 and 1957, defendant notified plaintiffs' predecessors in interest that the last partial payment they received was in "final settlement" as "no further distribution is anticipated"; but then noted on the bonds themselves that the "[b]alance [is] to be paid on further collections." The trial court found that by this language defendant had repudiated the trust but had renounced such repudiation and reinstated

itself as trustee when it made payments in the same manner to another bondholder in 1975. Plaintiffs argue in support of the judgment that the 1955 and 1957 notices were equivocal and therefore did not constitute repudiations. (*Shaw v. Lorenz* (1969), 42 Ill. 2d 246, 246 N.E.2d 285; *Miller v. Chicago Transit Authority* (1966), 78 Ill. App. 2d 375, 223 N.E.2d 323.) We agree, as the language stated that further distribution was unlikely but held out hope of additional payments from future collections. In addition, as the records which revealed transfers to the suspense account were not disclosed by defendant until the middle of the trial, we believe such concealment must be weighed in plaintiffs' favor. (*Lesser v. Village of Mundelein.*) Therefore, we see no error in the failure to find that plaintiffs' cause was barred by the equitable doctrine of laches.

Lastly, defendant contends that the dismissal of its counterclaim for costs under section 41 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 41) was an abuse of discretion.

Section 41 provides:

> "Allegations and denials, made without reasonable cause and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court upon motion made within 30 days of the judgment or dismissal." (Ill. Rev. Stat. 1977, ch. 110, par. 41.)

This provision has been viewed as "an attempt by the legislature to penalize the litigant who pleads frivolous or false matters or brings a suit without any basis in law and thereby puts the burden upon his opponent to expend money for an attorney to make a defense against an untenable suit. [Citations.]" *Greengard v. Cooper* (1966), 78 Ill. App. 2d 86, 89, 221 N.E.2d 775, 777.

■■ Here, while plaintiffs failed to prove their allegation that defendant "has commingled special assessment funds [and] that said assessment funds * * * has [*sic*] been used to pay general corporate obligations" they did establish a commingling with funds from other special assessments in the suspense account which earned interest benefiting defendant. Also, while plaintiffs failed to prove another allegation that defendant "has deposited special assessment funds in depositories which it knew to be unsound and unable to respond on demand for payment" they did prove that defendant's deputy clerk for some years prior to 1931 fraudulently dealt with warrant 264 and, except for the fortuitous fact that the clerk reimbursed warrant 264 in the amount of $3,000 to avoid prosecution, such funds would have been in just as precarious a position as though they had been deposited in an unsound bank. Moreover,

plaintiffs did prove their allegation that warrant 264 funds were diverted and misapplied. Therefore, although their allegations were not as precise as they might have been, they were not so untenable as to come within the provisions of section 41, and we conclude that the dismissal of the counterclaim was proper.

For the reasons stated, the judgment appealed from is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.

### SUPPLEMENTAL OPINION ON DENIAL OF REHEARING*

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

In its petition for a rehearing of this matter, defendant contends that contrary to the conclusion in our opinion the trial court did accept plaintiffs' computations without alteration; that although its hypothetical question was stricken, if the mathematical analysis presented in the question is applied by this court to the exhibits admitted into evidence, the merit of its appeal would be established; that the schedule of collections appearing in the text of our opinion is inaccurate in that it failed to consider the contents of exhibits; that if a new schedule were recomputed and then analyzed by this court its appeal would be shown to be meritorious; that its accountant did not testify as stated in our opinion that he treated all funds collected in relation to warrant 264 as a unit; and that this court misapprehended the doctrine of laches.

Initially we point out that plaintiffs were ordered by this court to respond to the petition for rehearing and in doing so tacitly agreed with defendant's contention that the trial court did accept the calculations of their accountant without alteration. Although the record fails to affirmatively show this to be the case, the litigants' acceptance of the existence of such circumstance will be taken as an admission. (*McKenzie v. Arthur T. McIntosh & Co.* (1964), 50 Ill. App. 2d 370, 200 N.E.2d 138.) In the text of our opinion we noted that plaintiffs' accountant had: (1) failed to deduct taxpayer rebates of $61.29 in installments two through four; (2) included $1,227.96 as the amount which should have been but was not levied and collected in installment six; (3) inadvertently duplicated this error by again adding $1,227.96 to the amounts collected; and (4) treated cancelled bonds totalling $646.86 as a cash collection. Since the inclusion of such amounts expanded defendant's liability beyond the sums actually collected and because plaintiffs have admitted the court's use of those figures, we conclude that the judgments entered

---

* A second supplemental opinion, filed October 20, 1978, appears at page 1052.

were based upon an erroneous overstatement of collections in the amount of $3,286.65.

Turning to defendant's contentions concerning the application of its hypothetical question to the contents of exhibits and the accuracy[3] of the schedule contained in the text of our opinion, we initially note that the record presented us includes voluminous and unexcerpted exhibits, hundreds in number, the contents of which are unspecified. In the normal course of events, a litigant who challenges the correctness of the ruling in an accounting case will by means of his brief and abstract or excerpts not only allege the law to be applied to the facts but also isolate the relevant accounting data to which the law must be applied.

Here, defendant argues that but for the erroneous calculations of plaintiffs' accountant which were relied upon by the trial court, judgment would not have been rendered in favor of plaintiffs. In other words it does not seek a reduction of the amounts awarded plaintiffs but rather judgment in its favor. With the exception of the errors we have set forth above, defendant has made no attempt to isolate the specific data which he claims erroneously contributed to the judgment below. Rather than detailing evidence to support his contention that any judgment in favor of plaintiffs was against the manifest weight of the evidence, it alleges numerous points in a generalized and abstract manner. As the issues have been stated in such fashion (*Ambrosius v. Katz* (1954), 2 Ill. 2d 173, 117 N.E.2d 69), and as relevant portions of the record necessary to ascertain whether defendant's allegations of error are meritorious have not been isolated in the briefs or excerpts (*First Federal Savings & Loan Association v. 4800 Marine Drive, Inc.* (1964), 49 Ill. App. 2d 218, 198 N.E.2d 583 (abstract)), we are unable to say that the judgment of the trial court was erroneous beyond those errors noted above.

Defendant next contends that its expert did not testify as stated in our opinion that in compiling the 1954 payment schedule all funds collected in relation to a particular warrant such as warrant 264 were allotted to the benefit of all bondholders regardless of installment. We have again reviewed the testimony and have found that the expert did so testify.

Lastly defendant contends that we misapprehended the doctrine of laches. Again we disagree as we believe that the law dispositive of this issue was correctly stated in our opinion.

■■ We affirm that portion of the judgment order finding the issues in favor of plaintiffs but, having concluded that warrant 264 collections were overstated by the trial court to the extent of $3,286.65, we will vacate the findings of the trial court as to the amounts due each plaintiff and

---

[3] The accuracy of the table is supported by the amounts elicited from defendant's cross-examination of plaintiffs' expert and direct examination of its own expert.

remand this cause to determine the resulting adjustment and plaintiffs' pro rata shares plus accrued interest when the above sum is deducted from the amount of collections as previously determined by the trial court.

Affirmed in part; vacated in part and remanded for a redetermination of amounts due each plaintiff.

MEJDA and WILSON, JJ., concur.