BEXAR COUNTY HOSPITAL DISTRICT V. JACK B. CROSBY ET AL.

No. A-7214. Decided July 15, 1959.
Rehearing Overruled October 7, 1959.
(327 S.W. 2d Series 445)

*J. Bruce Aycock* and *Harvey L. Hardy*, both of San Antonio, for petitioner.

It was error for the Court of Civil Appeals to hold that the second paragraph of section 13 of Article 4494n was unconstitutional. Also in holding that petitioner was not entitled to the sinking fund securing the bond obligation, or in giving petitioner credit for the amount thereof on the debt assumed or in requiring respondents to apply the funds thereof to the payment of the debt assumed. Collingsworth County v. Allred, 120 Texas

473, 40 S.W. 2d 13; Day Land & Cattle Company v. State, 68 Texas 526, 4 S.W. 865; Bexar County v. Linden, 110 Texas 339, 220 S.W. 761.

*Charles J. Lieck, Jr.,* Criminal District Attorney, for Bexar County, *L. J. Gittinger,* Assistant Crim. Dist. Atty., both of San Antonio, for Jack B. Crosby and Bexar County, *Carlos C. Cadena,* City Attorney, *Charles L. Smith,* Asst. City Attorney, of San Antonio, for City of San Antonio, respondents.

In response to petitioner's points cited, Harris County Flood Control Dist. v. Mann, Atty. Gen., 135 Texas 239, 140 S.W. 2d 1098; City of Austin v. Cahill, 99 Texas 172, 88 S.W. 536; Road Distr. v. Allred, Atty. Gen., 123 Texas 77, 68 S.W. 2d 164; Walker v. Baker, 145 Texas 121, 196 S.W. 2d 324; Gately v. Humphrey, 151 Texas 588, 254 S.W. 2d 98.

Mr. Chief Justice Hickman delivered the opinion of the Court.

This is a suit for declaratory judgment filed by Bexar County Hospital District, a political subdivision of the State, hereinafter called the District, against Jack B. Crosby in his official capacity as County Auditor of Bexar County and against Bexar County and the City of San Antonio, hereinafter called the City and County, to construe Article IX, Sec. 4, of the Texas Constitution, and Article 4494n, Vernon's Texas Civil Statutes, the enabling act thereunder. The purpose of this suit is to determine who is entitled to the custody and control of (1) certain delinquent taxes which were levied by the City and County specifically to finance hospitals which were later taken over by the District, and (2) certain sinking funds which were accumulated from taxes levied by the City and County specifically to retire bonded indebtedness which was later assumed by the District. All parties moved for summary judgment on stipulated facts. The trial court denied the District's motion, and granted the motion of the City and County. Its judgment was affirmed by the Court of Civil Appeals (320 S.W. 2d 247), one of the Justices dissenting in part.

The constitutional provision under which the District was created, Article IX, Sec. 4 Texas Constitution, reads as follows:

"Sec. 4.  The Legislature may by law authorize the creation of county-wide Hospital Districts in counties having a population in excess of 190,000 and in Galveston County, with power to

issue bonds for the purchase, acquisition, construction, maintenance and operation of any county owned hospital, or where the hospital system is jointly operated by a county and city within the county, and to provide for the transfer to the county-wide Hospital District of the title to any land, buildings or equipment, jointly or separately owned, and for the assumption by the district of any outstanding bonded indebtedness theretofore issued by any county or city for the establishment of hospitals or hospital facilities; to levy a tax not to exceed seventy-five ($.75) cents on the One Hundred ($100.00) Dollar valuation of all taxable property within such district, provided, however, that such district shall be approved at an election held for that purpose, and that only qualified, property taxpaying voters in such county shall vote therein; provided further, that such Hospital District shall assume full responsibility for providing medical and hospital care to needy inhabitants of the county, and thereafter such county and cities therein shall not levy any other tax for hospital purposes; and provided further that should such Hospital District construct, maintain and support a hospital or hospital system, that the same shall never become a charge against the State of Texas, nor shall any direct appropriation ever be made by the Legislature for the construction, maintenance or improvement of the said hospital or hospitals * * *."

The particular portion of Article 4494n, V.A.T.C.S., here under review is paragraph 2 of Section 13, which reads as follows:

"That portion of delinquent taxes owed cities and counties on levies for present city and county hospital systems under Acts 48th Legislature, 1943, Chapter 383, page 691, shall continue to be paid to the Hospital District by the city and county as collected, and applied by the Hospital District to the purposes for which such taxes originally were levied."

It was held by both courts below that that paragraph violates Sections 51 and 52, Article III, of the Texas Constitution, which provide, in effect, that the Legislature shall not grant or authorize any county or city to grant public money to any corporation whatsoever. It was further held that the District was not entitled to custody of the sinking funds accumulated for the purpose of retiring bonds theretofore issued by the City and County for the purpose of building hospitals and purchasing equipment.

Prior to the adoption of Article IX, Sec. 4, of the Constitution, and Article 4494n, V.T.C.S., the enabling act thereunder, the City and County entered into an agreement for the joint support of two hospitals theretofore operated by the County, which agreement provided that those hospitals would be operated administratively by the San Antonio-Bexar County Hospital System.

1 Following the adoption of the constitutional amendment and passage of the enabling act, and an election by the people, the hospital system was dissolved, and the Hospital District created. During the existence of the contract between the City and the County for the joint support and operation of the hospital system, certain taxes levied for hospital purposes became delinquent, and the first question for decision is whether the second paragraph of the enabling act, Section 13, Article 4494n, V.T.C.S., which requires a city and county to pay over to the District those delinquent taxes as collected violates Sections 51 and 52, Article III, of the Texas Constitution, which, as above stated, prohibit the Legislature from granting or authorizing any county or city to grant public money to any corporation whatsoever.

It is without dispute that the District is a corporation and that the delinquent taxes are public money. The constitutionality of Paragraph 2, Section 13, turns therefore upon whether the payment of those delinquent taxes to the District to be applied for the support and maintenance of hospitals is a grant within the meaning of Sections 51 and 52. It is also argued that since Section 4 of Article IX of the Constitution expressly authorized the Legislature to provide for the transfer to the District of hospital land, buildings and equipment owned by the City or County, but made no mention of delinquent taxes under the maxim *"Expressio unius est exclusio alterius,"* it must be presumed that the framers of that Article and Section intended that the delinquent taxes be not transferred.

2 There can be no dispute but that in this State the provisions of the Constitution serve only as a limitation on the power of the Legislature, and not as a grant of power. That limitation of authority does not appear in this case from an application of the maxim *"Expressio unius est exclusio alterius."* The entire Act must be viewed to determine whether or not, as a whole, it clearly forbids the transfer of the delinquent taxes when collected. It appears from the record that the delinquent taxes here involved were levied by the City and County to finance a specific function, and are limited to that use. They are not a

part of the general fund, as in the case of Harris County Flood Control District v. Mann, 135 Texas 239, 140 S.W. 2d 1098, but were levied for hospital purposes and are limited to that use. Since the entire function of maintaining and operating hospitals was transferred to a different governmental body, a provision directing the transfer of such "ear-marked" funds to the successor governmental body is not a gratuity within the meaning of Sections 51 and 52. The effect of the legislative act was to provide that since the District was charged with the duty and responsibility of maintaining and operating the hospitals in Bexar County, the taxes levied for that purpose should be administered by it. To our minds that is not a grant of public funds within the constitutional inhibition.

The second question for decision is whether the District is entitled to compel transfer to it of the sinking funds collected by the City and County for the purpose of retiring the hospital bonds originally issued by the City and County, but assumed by the District; or in the alternative, whether the District is entitled to compel the City and County to apply those sinking funds to the retirement of such bonded indebtedness. The Court of Civil Appeals denied that the District had the right to do either.

This second question does not involve the constitutionality of Article 4494n, for it does not expressly or by necessary implication require the City and County to transfer the sinking funds to the District or apply them to the bonded indebtedness. The basic contention urged by the District is that since Article 4494n requires the District to assume the outstanding bonded indebtedness, then the District should be entitled to apply, or have applied, to the retirement of that indebtedness all sinking funds accumulated from taxes levied specifically for that purpose.

3   The District argues that since (1) the sinking funds here involved were accumulated from taxes levied specifically to retire certain bonded indebtedness, they are held by the City and County in trust for the benefit of the bondholders; (2) since the District under Article 4494n assumed full responsibility for furnishing hospital care as well as primary responsibility for payment of the outstanding bonded indebtedness, it stands in the position of successor trustee to the City and County; and (3) therefore as successor trustee the District is entitled to custody of the sinking funds to be applied to the respective

bonded indebtedness, or in the alternative is entitled, at least, to compel the City and County to so apply the funds.

We agree with the District's proposition that the City and County hold in trust for the bondholders taxes levied specifically to retire certain bonded indebtedness. See City of Austin v. Cahill, 99 Texas 172, 88 S.W. 542, 89 S.W. 552; Rittenoure v. City of Edinburg, 159 F. 2d 989. We also agree that neither the City, the County nor the District can apply those funds to any purpose except the retirement of that bonded indebtedness. Article 839, R.C.S., 1925; Phillips Investment Co. v. Road District No. 18 of Limestone County, Texas Civ. App., 172 S.W. 2d 707, wr. err. ref.

4. The question of which agency should have custody of the accumulated sinking funds pending their application to the payment of the bonds is of but little importance. The custodian cannot profit by investing the sinking funds, for the interest from their investment must be applied to the fund itself. Article 780, R.C.S., 1925. Article 4494n specifies in detail the property which is to be transferred to the District, but makes no mention of sinking funds. These bonds are payable serially from taxes levied from year to year to pay the same as they mature. As between the City and the County on the one hand and the District on the other, the effect of the assumption by the latter of payment of the bonds should be construed as an assumption of the payment of so much of the bonds as cannot be retired by the sinking funds on hand. It is our view that the custody of the sinking fund heretofore accumulated should remain in the City and County, with the requirement that such funds, including all interest which may have accumulated from the investment thereof, be applied toward retirement of the bonds first maturing. Whatever amount of interest may have been collected from the investment of the sinking funds should be accounted for by the City and County.

Our conclusion is that in so far as the judgment of the Court of Civil Appeals held that the second paragraph of Section 13, Article 4494n, V.T.C.S., which requires the City and County to pay over to the District certain delinquent taxes as collected, constituted a grant of public money to a corporation, and was therefore violative of Sections 51 and 52 of Article III of the Texas Constitution, that judgment is reversed, and judgment here rendered declaring that provision to be constitutional. In so far as it held that the District was not entitled to compel the City and County to transfer to it the custody of the sinking

funds, that judgment is affirmed, but in further proceedings the parties will be governed by this opinion.

Affirmed in part and reversed and rendered in part.

Opinion delivered July 15, 1959.

MR. JUSTICE SMITH, dissenting.

I would affirm the judgment of the Court of Civil Appeals. The majority states that the question of which agency should have custody of the accumulated sinking funds, pending their application to the payment of the bonds, is of but little importance. In my opinion, it is important to follow the Constitution on both the question involving the sinking funds as well as the question relative to the transfer of the delinquent taxes. There is nothing in the Constitution or the record in this case to warrant the unlawful transfer of the delinquent taxes to the Hospital District. The Constitution named lands, buildings or equipment jointly or separately owned by the county or city, and stopped there. It did not mention delinquent taxes. The theory adopted by the majority is the same in principle as the one we rejected in the case of Deason v. Orange County Water Control & Improvement District No. 1, 151 Texas 29, 244 S.W. 2d 981.

The particular portion of Article 4494n, Vernon's Annotated Texas Civil Statutes, which authorizes the transfer of the delinquent taxes in addition to the constitutionality allowed transfer of land, buildings and equipment, violates Sections 51 and 52, Article III, of the Texas Constitution. See Harris County Flood Control District v. Mann, 135 Texas 239, 140 S.W. 2d 1098.

I therefore respectfully dissent.

Opinion delivered July 15, 1959.

Rehearing overruled October 7, 1959.