

# The Attorney General of Texas

April 11, 1984

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

J01 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Luther Jones
El Paso County Attorney
Room 201, City-County Building
El Paso, Texas    79901

Opinion No. JM-142

Re:  Whether a water district
may use excess bond monies
levied for the interest and
sinking fund for a water pro-
ject not described in the bond
issue

Dear Mr. Jones:

You ask us the following question:

> Can a water district use the proceeds of a bond
> issue passed pursuant to an act of the Thirty-
> ninth Legislature, chapter 25, 1925, for water
> projects other than the project described in the
> original bond issue?

We understand you to ask whether the district can expend surplus
monies levied for the interest and sinking fund on water projects
other than that described in the original bond issue.  We conclude
that monies in the interest and sinking fund cannot be expended for
any purpose other than those set forth in section 51.436 of the Water
Code.  After the outstanding bonds are retired, any surplus may either
be refunded if practicable, to taxpayers or be transferred to the
district's maintenance fund.

You have supplied us with the following information.  The El Paso
County Water Control and Improvement District No. 4 issued a series of
sewer bonds in 1956 in the amount of $275,000.00.  Sections 51.433 and
51.434 of the Water Code require the district's board to levy a tax
for the purpose of redeeming and discharging the bonds and paying the
interest thereon.  The fund created thereunder is now in excess of
$390,000.00, with approximately $31,000.00 in bonds outstanding.  The
district proposes to use the excess funds for an Environmental
Protection Agency project after the district has retired the remaining
$31,000.00 in bonds.

Section 51.436 of the Water Code provides the following:

(a) The district shall have an interest and sinking fund which shall include all taxes collected under this chapter.

(b) Money in the interest and sinking fund may be used only:

(1) to pay principal and interest on the bonds;

(2) to defray the expenses of assessing and collecting the taxes; and

(3) to pay principal and interest due under a contract with the United States if bonds have not been deposited with the United States.

(c) Money in the fund shall be paid out of the fund on warrants by order of the board as provided in this chapter.

(d) The depository shall receive and cancel each interest coupon and bond as it is paid and shall deliver it to the board to be recorded, cancelled, and destroyed. (Emphasis added).

Unambiguous statutory language is not subject to construction, but must be enforced as written. Ex parte Roloff, 510 S.W.2d 913 (Tex. 1974); Col-Tex Refining Co. v. Railroad Commission of Texas, 240 S.W.2d 747 (Tex. 1951). The clear language of the statute requires that money in the interest and sinking fund be expended only for three specified purposes. The district is without authority to expend the funds for any other purpose. But see Water Code §51.437 (permitting the investment of the funds in certain instances). Moreover, absent specific statutory authority to the contrary, monies in an interest and sinking fund may be used for no other purpose than the one for which it was created. Bexar County Hospital District v. Crosby, 327 S.W.2d 445 (Tex. 1959). See Attorney General Opinion H-658 (1975).

This rule applies when bonds remain outstanding. The rule is less clear when all of the outstanding bonds have been retired and there remains a surplus in the interest and sinking fund. In specific instances, the Texas Legislature has permitted the expenditure of surplus interest and sinking fund monies after the bonds outstanding are retired. See, e.g., V.T.C.S. arts. 723, 752a. The Water Code, however, is silent as to whether surplus monies in the interest and sinking fund can be expended after the bonds outstanding are retired.

It has been suggested that any surplus monies in the interest and sinking fund can be expended for any lawful purpose of the taxing

unit.   Cited in support of such a proposition is <u>Madeley v. Trustees
of Conroe Independent School District</u>, 130 S.W.2d 929 (Tex. Civ. App.
- Beaumont 1939, writ dism'd judgmt cor.).  We disagree both with the
proposition  and  with  the  characterization  of  the  <u>Madeley</u> case.
<u>Madeley</u> concerned the disposition of surplus monies in the <u>maintenance</u>
<u>fund</u> of an independent school district which the trustees sought to
expend on the erection and equipment of a school building.   The court
held that the surplus monies in the maintenance fund ceased to be
governed by the strictures imposed thereon by statutes specifying the
purposes for which maintenance funds could be expended once the
purpose of the statutes has been effectuated.

> If and when the statutes cease to control the
> fund, then it becomes a constitutional fund and
> not a statutory fund, and may be used by the
> trustees for the constitutional purposes; one of
> the constitutional purposes is 'the erection and
> equipment of school buildings' within the
> district.   What we have said is in full
> recognition of the legal proposition that the fund
> collected for the support and maintenance of the
> public free schools, to the extent that it is
> needed for that purpose, can not be diverted to
> any other purpose.

<u>Madeley v. Conroe Independent School District</u>, <u>supra</u> at 934.

The following language in <u>Madeley</u> is that cited in support of the
proposition that surplus monies in the interest and sinking fund may
be expended for any lawful purpose of the taxing unit.

> The following illustration is in point on our
> holding:  Where a district has issued bonds and
> voted a tax to retire them, what becomes of the
> surplus of the tax when the bonds are retired?
> Since it is not reasonable that the exact amount
> of the bonds will be collected, on every bond
> issue the trustees will have in their hands a
> surplus.   Again, a tax payer permits his tax to
> become delinquent until after the bonds are
> retired; when sued, can he defend on the ground
> that the bonds for which the tax against his
> property was levied have been paid off?  When the
> delinquent tax is collected, how shall it be
> expended?   These questions find their answer in
> Sec. 3 of Art. 7 of the Constitution; where the
> bonds have been paid off the statutes regulating
> the expenditure of the funds for their payment
> cease to control the power of the trustees in the
> expenditure of the surplus, and its expenditure

> rests in the discretion of the trustees, under
> Sec. 3 of Art. 7 of the Constitution.

Id.  For two reasons we conclude that such language is not dispositive of the issue before us.  First, the paragraph is dicta.  At issue in Madeley was a surplus in the maintenance fund, not in the interest and sinking fund.

Second, and more importantly, the court specifically held that article VII, section 3 of the Texas Constitution permitted school districts to levy a maintenance tax for "the erection and equipment of school buildings" within the district, as well as "for the further maintenance of public free schools."  Tex. Const. art. VII, §3.  The court noted that, for years, trustees of independent school districts had expended surplus monies in maintenance funds for erection of public school buildings.  The constitutional provisions under which water control and improvement districts are created do not contain language similar to that of article VII, section 3.  See Water Code §51.011.  Article III, section 52 of the Texas Constitution authorizes the legislature to permit political subdivisions to issue bonds for certain specified purposes and to "levy and collect taxes to pay the interest thereon and provide a sinking fund for the redemption thereof . . . ."  Clearly, article III, section 52 contemplates the creation of a discrete, segregated interest and sinking fund; there is no language which could be construed to permit the expenditure of any surplus interest and sinking fund monies for any purpose other than the payment of interest and the redemption of outstanding bonds.

Likewise, article XVI, section 59 of the Texas Constitution authorizes the legislature to permit conservation and reclamation districts to issue bonds "as may be necessary to provide all improvements and the maintenance thereof requisite to the achievement of the purposes of this amendment" and to levy and collect "all such taxes, equitably distributed, as may be necessary for the payment of the interest and the creation of a sinking fund for the payment of such bonds; and also for the maintenance of such districts and improvements . . . ."  Again, it is clear that the constitution contemplates the creation of at least two discrete funds, one for maintenance of the districts and one for the payment of interest on and redemption of outstanding bonds.  And again, there is no language in article III, section 52 which could be construed to permit the expenditure of surplus interest and sinking fund monies for any lawful purpose of the taxing unit.

There is admittedly a dearth of explicit, direct authority in this area.  Courts in other jurisdictions have held that surplus monies in an interest and sinking fund can be expended after outstanding bonds have been redeemed for purposes other than those for which the bonds were originally issued and sold, but only when such was specifically provided by statute.  See, e.g., Diver v. Village of

Glencoe, 379 N.E.2d 1214 (Ill. App. 1978); Jack's Cookie Corp. v. Giles County, 407 S.W.2d 446 (Tenn. 1966); St. Louis-San Francisco Ry. Co. v. Ottawa County Excise Board, 207 P.2d 275 (Okla. 1949); King v. Duval County, 174 So. 817 (Fla. 1937); Flint v. Duval County, 170 So. 587 (Fla. 1936); Rothschild v. Village of Calumet Park, 183 N.E. 337 (Ill. 1932).

The dearth of authority in this area may be easily explained by the fact that constitutional and statutory provisions which govern the creation of sinking funds ordinarily contemplate that no more taxes shall be collected than are necessary to meet the principal and interest on the bonds. See, e.g., East St. Louis v. United States, ex rel. Zebley, 110 U.S. 321 (1884); E.T. Lewis Co. v. Winchester, 130 S.W. 1094 (Ky. App. 1910); Rogge v. Petroleum County, 80 P.2d 380 (Mont. 1938); State v. Board of Public Instruction for Dade County, 170 So. 602 (Fla. 1936); 15 E. McQuillin, Municipal Corporations, §43.133 (1970). In fact, some courts have held that any levy creating such a surplus is void as to the excess. People ex rel. Brenza v. Fleetwood, 109 N.E.2d 741 (Ill. 1952); People ex rel. Manifold v. Wabash Ry. Co., 53 N.E.2d 976 (Ill. 1944); Rogge v. Petroleum County, supra.

We construe the Water Code to permit only the imposition of an interest and sinking fund levy sufficient to pay the bonds and interest as they become due. It clearly does not permit nor does it contemplate the creation of a surplus. Section 51.433 provides the following in pertinent part:

§51.433.   Tax Levy

(a) At the time bonds are voted, the board shall levy a tax on all property inside the district in a sufficient amount to redeem and discharge the bonds at maturity.

(b) The board annually shall levy or have assessed and collected taxes on all property inside the district in a sufficient amount to pay for the expenses of assessing and collecting the taxes.

(c) If a contract is made with the United States, the board annually shall levy taxes on property inside the district in a sufficient amount to pay installments and interest as they become due.

(d) The board may issue the bonds in serial form or payable in installments, and the tax levy shall be sufficient if it provides an amount

> sufficient to pay the interest on the bonds, the proportionate amount of the principal of the next maturing bonds, and the expenses of assessing and collecting the taxes for that year. (Emphasis added).

Section 51.434 of the code provides the following:

> §51.434.  Adjustment of Tax Levy
>
> (a)  The tax levy made in connection with the issuance of bonds shall remain in force from year to year until a new levy is made.
>
> (b)  The board may from time to time increase or diminish the tax to adjust it for the taxable values of the property subject to taxation by the district and the amount required to be collected.
>
> (c)  The board shall raise an amount sufficient to pay the annual interest of and principal on all outstanding bonds.  (Emphasis added).

It is suggested that Attorney General Opinion MW-97 (1979) controls this issue.  In Attorney General Opinion MW-97 (1979), this office declared that, in an instance in which the applicable statutes were silent as to the disposition of any surplus interest and sinking fund monies after the redemption of bonds outstanding, such funds may be expended only for the same "public improvements" for which the bonds were originally issued.  Quoting McQuillin, Municipal Corporations at Volume 15, §43.134, the opinion declared:

> A sinking fund should be applied to the payment of the principal and interest on the bonds which it was created to service, and even though the bonds have been declared void, cannot be diverted to other purposes.  Thus, it is an unlawful diversion to transfer a sinking fund to the general fund. . . .  It has been held that an unallocated surplus remaining after the payment of principal and interest of outstanding bonds may be used for the construction of a public improvement . . . . (Emphasis added).

The case cited by McQuillin in support of the above underscored language is King v. Duval County, supra.  As we have already noted, the rule in King is not a general rule of law with respect to the disposition of surplus interest and sinking fund levies; the transfer permitted in King was specifically authorized by statute.  Such is not the case in the Water Code.  Attorney General Opinion MW-97,

therefore, relied upon authority which does not support the proposition for which it was cited. Accordingly, to the extent to which Attorney General Opinion MW-97 conflicts with this opinion, it is hereby overruled.

In the absence of specific statutory authority, the prevalent judicial and legislative reasoning appears to be that such surplus monies may be refunded to taxpayers, see, e.g., Diver v. Village of Glencoe, supra; City of Stuttgart v. McCuing, 234 S.W.2d 209 (Ark. 1950), unless such refund would be impracticable. In such event, the surplus levy may be transferred to the general maintenance fund. See Morton v. Baker, 494 S.W.2d 122 (Ark. 1973); Lawrence v. Jones, 313 S.W.2d 228 (Ark. 1958).

We conclude that, in the absence of statutory authority directing the disposition of any surplus monies levied for the interest and sinking fund, the water district may refund such excess to taxpayers or, in the event that such refund is impracticable, transfer such monies to the maintenance fund of the district. We note that section 51.352 of the Water Code specifies the purposes for which monies in maintenance fund may be expended. See also Water Code §51.351 (provides that proceeds from the sale of bonds shall be deposited in the construction fund and that, after the payment of obligations for which the bonds were issued, any remaining money in the construction fund may be transferred to the maintenance fund).

### S U M M A R Y

In the absence of statutory authority directing the disposition of any surplus monies levied for the interest and sinking fund after the redemption of bonds outstanding, the El Paso County Water Control and Improvement District No. 4 may refund such excess to taxpayers or, in the event that such refund is impracticable, transfer such monies to the maintenance fund.

Very truly yours,

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Jim Moellinger
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Jon Bible
Colin Carl
Susan Garrison
Jim Moellinger
Nancy Sutton