OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

May 10, 2000

The Honorable David Counts
Chair, Committee on Natural Resources
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0220

Re: Whether a hospital district may continue to levy a tax after closing its hospital and related questions (RQ-0149-JC)

Dear Representative Counts:

You request an opinion regarding the powers and duties of the Garza Hospital District (the "District"), a county-wide hospital district, that no longer operates a hospital, but continues to levy and collect hospital district taxes. Specifically, we understand you to ask[1] the following questions: first, whether the District was authorized to close its hospital; second, whether the District was authorized to lease its hospital facilities to a private hospital system for operation of a clinic to provide medical care to county residents; third, whether the District may continue to levy a tax after closing the hospital; fourth, if it may continue to tax, whether the tax proceeds may be used to make payments under a contract with a private hospital system to provide medical care for county residents; and fifth, whether the District may be dissolved at an election called and held for that purpose.

We conclude that the District was authorized to close its hospital if the District's Board of Directors determined that closing the hospital was in the best interest of the District's residents and the Board otherwise complied with the statutory procedures. Similarly, we conclude that the District was authorized to lease its hospital facilities to a private hospital system for the operation of a clinic to provide hospital and medical care to the District's needy inhabitants if the District Board of Directors determined that the lease was in the best interest of the District residents. In answer to your third and fourth questions, we conclude that because closure of the hospital does not relieve the District of its responsibility to provide and pay for hospital and medical care to its needy residents,

---

[1]You do not ask specific questions in your request, but rather refer us to unanswered questions asked of the District by a Garza County newspaper regarding the District's closure of its hospital and contract with Methodist Hospital for the operation of the clinic located in the District's facilities. *See* Letter from Honorable David Counts, Chair, Committee on Natural Resources, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General (Jan. 3, 2000) (on file with Opinion Committee) [hereinafter "Request Letter"]; Letter from Wesley W. Burnett, Publisher, The Post Dispatch, to Jack Alexander, President, Garza Hospital District Board of Directors and Board Members (June 5, 1998) (asking questions raised by District's Enabling Act); Letter from W. Calloway Huffaker, Esq., to Maritta Reed, Garza Hospital District Board (June 16, 1998) (addressing questions asked by The Post Dispatch).

the District may continue to levy a tax and use the proceeds to make payments under a contract to provide that care. With respect to your second and fourth questions, we also conclude that the District may through this contract offer medical care to nonindigent Garza County residents, provided the District charges those persons the actual cost of the services. Finally, we conclude that the District may not be dissolved pursuant to an election because there is no statutory authority to call and hold a dissolution election with respect to the District.

A hospital district's powers and duties are determined by looking at the authorizing constitutional provision, its enabling act, and provisions of the Health and Safety Code applicable to hospital districts generally. Tex. Att'y Gen. Op. No. DM-37 (1991) at 1-2. As a special district, the District may exercise only those powers that are expressly delegated to it by the legislature, or which exist by clear and unquestioned implication. *Tri-City Fresh Water Supply Dist. No. 2 v. Mann*, 142 S.W.2d 945, 946 (Tex. 1940); *Jackson County Hosp. Dist. v. Jackson County Citizens for Continued Hosp. Care*, 669 S.W.2d 147, 154 (Tex. App.–Corpus Christi 1984, no writ ).

The Garza Hospital District was created and established pursuant to article IX, section 9 of the Texas Constitution and special enabling legislation. *See* Act of May 17, 1967, 60th Leg., R.S., ch. 502, § 1, 1967 Tex. Gen. Laws 1132. Article IX, section 9 of the Texas Constitution provides in part:

> The Legislature may by general or special law provide for the creation, establishment, maintenance and operation of hospital districts composed of one or more counties or all or any part of one or more counties with power to issue bonds for the purchase, construction, acquisition, repair or renovation of buildings and improvements and equipping same, *for hospital purposes*; providing for the transfer to the hospital district of the title to any land, buildings, improvements and equipment located wholly within the district which may be jointly or separately owned by any city, town or county, providing that any *district so created shall assume full responsibility for providing medical and hospital care for its needy inhabitants* and assume the outstanding indebtedness incurred by cities, towns and counties for hospital purposes prior to the creation of the district, . . . *providing that after its creation no other municipality or political subdivision shall have the power to levy taxes or issue bonds or other obligations for hospital purposes or for providing medical care within the boundaries of the district*; providing for *the levy of annual taxes* at a rate not to exceed seventy-five cents (75¢) on the One Hundred Dollar valuation of all taxable property within such district for the purpose of meeting the requirements of the *district's bonds, the indebtedness assumed by it and its maintenance and operating expenses* . . . .

TEX. CONST. art. IX, § 9 (emphasis added).

Pursuant to article IX, section 9, the legislature enacted House Bill 1325, Act of May 17, 1967, 60th Leg., R.S., ch. 502, 1967 Tex. Gen. Laws 1132 (the "Enabling Act"), authorizing the creation and establishment of the District with boundaries coextensive with Garza County, subject to voter approval. *See id.* Under the Enabling Act, the District has the "powers and responsibilities provided by" article IX, section 9. *Id.* § 1. The District is directed to assume "full responsibility for providing medical and hospital care for the needy persons residing within the district[.]" *Id.* § 2. Garza County and any city in the county are prohibited from levying a tax for hospital purposes after the District's organization, because the District "shall be deemed to have assumed full responsibility for the furnishing of medical and hospital care for the needy and indigent persons residing in said hospital district from the date that taxes are collected for the hospital district." *Id.* § 12.

Garza Hospital District apparently owned and operated a hospital and levied a tax on all taxable property in the District pursuant to article IX, section 9 and the Enabling Act. The District also apparently continues to levy the tax. You explain , however, that the District Board of Directors closed the District hospital and contracted with Methodist Hospital, presumably a private hospital or health system, for the operation of a clinic located in the District's facilities. *See* Request Letter. District residents, you tell us, now question the need for the District given that it no longer provides "hospital care." *Id.* In particular, residents question the District's authority to levy a tax when it no longer provides hospital services. *Id.*

We begin our analysis with your fifth question: whether the District may order an election to dissolve the District upon receipt of a petition by the District residents. Neither the Enabling Act nor any other provision applicable to the District that we have found authorizes an election to dissolve the District. We conclude that in the absence of statutory authorization, the District has no authority to call and hold a dissolution election.

While article IX, section 9 authorizes the legislature to provide for the dissolution of a hospital district, the legislature has not done so with respect to the District. Article IX, section 9 provides that the "*Legislature* may also provide for the dissolution of hospital districts *provided that a process is afforded by statute* for: (1) determining the desire of a majority of the qualified voters within the district to dissolve it; (2) disposing of or transferring the assets, if any, of the district; and (3) satisfying the debts and bond obligations, if any, of the district . . . ." TEX. CONST. art. IX, § 9 (emphasis added). By its terms, this provision is not self-executing; it authorizes the legislature to provide for dissolution of a hospital district subject to voter approval. *Cf.* Tex. Att'y Gen. Op. No. JM-859 (1988) at 3 ("Article IX, section 9, of the Texas Constitution . . . confers authority, not on the governing bodies of hospital districts, but rather on the legislature."). The District's Enabling Act does not authorize a dissolution election.

Nor does a provision of the Health and Safety Code applicable to the District authorize a dissolution election. Section 286.102 of the Health and Safety Code authorizing a hospital district

board of directors to order a dissolution election on receipt of a petition by the district residents, *see* TEX. HEALTH & SAFETY CODE ANN. § 286.102 (Vernon 1992), applies only to a hospital district created under that chapter. *See id.* §§ 286.001(2) ("'District' means a hospital district created under this chapter."), 286.002 (authorizing creation of general law hospital district under chapter 286). The District, of course, is created under the Enabling Act, not under chapter 286 of the Health and Safety Code. *See* Act of May 17, 1967, 60th Leg., R.S., ch. 502, § 1, 1967 Tex. Gen. Laws 1132.

The authority to hold an election is dependent on authority conferred by law. Tex. Att'y Gen. Op. No. DM-172 (1992) at 2 (and cases cited therein). As Attorney General Opinion C-380 states, "It is basic to our chosen form of government that the people of this State have no right to vote or hold an election in the absence of some statutory or constitutional provision which provides therefor." Tex. Att'y Gen. Op. No. C-380 (1965) at 2 (citing *Smith v. Morton Indep. Sch. Dist.*, 85 S.W.2d 853 (Tex. Civ. App.–1935, writ dism'd) and *Trustees of Indep. Sch. Dist. v. Elbon*, 223 S.W.10 (Tex. Civ. App. 1920)). Accordingly, Attorney General Opinion C-380 concluded that a county commissioners court did not have authority to call an election to abolish a special law hospital district nor did precincts comprising the hospital district in the absence of statutory or constitutional provision authorizing such an election. *Id.*

We next address your first question: whether the District was authorized to close its hospital. Again, neither article IX, section 9 nor the District's Enabling Act address closure of the District's hospital. But section 285.051(a) of the Health and Safety Code specifically authorizes the governing body of a hospital district to order by resolution "the sale, lease, or closing of all or part of a hospital owned and operated by the hospital district, including real property" upon a finding that it is in the best interest of the residents of the hospital district. TEX. HEALTH & SAFETY CODE ANN. § 285.051(a) (Vernon 1992). Section 285.051(b) and section 285.052 provide that the governing body must conduct an election on the sale or closing of a hospital if petitioned to do so by ten percent of the qualified voters of the hospital district before the 31st day after the date the governing body orders the sale or closing. *Id.* §§ 285.051(b), .052. These provisions clearly authorize a hospital district's governing body to order the closing of its hospital if it finds that the closing is in the best interest of the district's residents. Tex. Att'y Gen. Op. Nos. DM-37 (1991) at 1; JM-864 (1988) at 5. Because sections 285.051 and 285.052 are not limited in their application to a particular type of hospital district, they apply to the District. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 285.051, .052 (Vernon 1992). Accordingly, assuming the District's governing body made the requisite finding and otherwise complied with section 285.051, it had the authority to close the District's hospital.

Similarly, assuming the District's Board of Directors made the requisite finding under section 285.051, the District was authorized to lease its hospital facilities to a private hospital system for the operation of a clinic to provide hospital and medical care to the District's needy inhabitants. TEX. CONST. art. IX, § 9; TEX. HEALTH & SAFETY CODE ANN. § 285.051(a) (Vernon 1992); Tex. Att'y Gen. Op. Nos. DM-131 (1992), DM-66 (1991). Again, section 285.051(a) of the Health and Safety Code specifically authorizes the governing body of a hospital district to order by resolution "the sale, *lease*, or closing of all or part of a hospital owned and operated by the hospital district, including real

property" upon a finding that it is in the best interest of the residents of the hospital district. TEX. HEALTH & SAFETY CODE ANN. § 285.051(a) (Vernon 1992) (emphasis added). To be permissible, however, a hospital district facilities lease must also serve a hospital district purpose consistent with article IX, section 9, requiring a hospital district to provide medical care, particularly hospital and medical care to needy hospital district residents. *See* Tex. Att'y Gen. Op. No. DM-66 (1991) at 3 (stating that statutory authority to lease hospital building does not end analysis, must also consider whether hospital district's lease plan would serve hospital purpose consistent with article IX, § 9); *see also* Tex. Att'y Gen. Op. No. DM-131 (1992) at 1; Tex. Att'y Gen. LO-97-068, at 2-3.

In our opinion, lease of hospital district facilities for the operation of a clinic to provide medical care to county residents, including the needy, is entirely consistent with the requirements of article IX, section 9 of the Texas Constitution. *See* TEX. CONST. art. IX, § 9; Tex. Att'y Gen. Op. No. DM-131 (1992) at 1-2 (hospital district authorized to lease part of its facility for private operation of adolescent drug treatment facility, provided facility treats needy as well as other adolescents); Tex. Att'y Gen. Op. No. DM-66 (1991) at 3-4 (hospital district lease for operation of private dialysis clinic permissible because clinic would provide cost-effective renal services, primarily serve Medicare and Medicaid patients, and would be conveniently located adjacent to hospital). *Cf.* Tex. Att'y Gen. Op. No. JM-258 (1984) at 3 (hospital district not permitted to lease office space to private physicians because "offices for the private practice of medicine are not 'hospital purposes' or the provision of 'medical or hospital care for the needy'").

Because the authority to continue to levy a tax depends on the purposes for which that tax is authorized, we address your third and fourth questions together: whether the District may continue to levy a tax after closing its hospital and, if it may do so, whether the tax proceeds may be used to pay for a contract with a private health care system to provide medical care to county residents. We first determine that the District's maintenance and operating expense tax proceeds may be used for providing indigent medical and hospital care. We then conclude that because closure of the hospital does not relieve the District of its responsibility to provide and pay for indigent hospital and medical care, the District may continue to levy the tax and use the proceeds to make payments under a contract with a private hospital to provide that care. We also conclude that the District may through this contract offer medical care to nonindigent Garza county residents.

Hospital district taxes may be levied and used only for the purposes authorized in article IX, section 9 of the constitution and a hospital district's enabling legislation. *See Bexar County Hosp. Dist. v. Crosby,* 327 S.W.2d 445 (Tex. 1959) (article IX, section 9 tax levied for bond debt service may only be used for that purpose); *Tri-City Fresh Water Supply Dist. No. 2 v. Mann,* 142 S.W.2d 945, 948 (Tex. 1940) (taxing power may be exercised only for purposes distinctly included in constitutional or legislative provision); Tex. Att'y Gen. LO-97-004, at 1 (use of hospital district taxes limited to purposes set out in constitution); LO-95-088, at 1 (same).

Article IX, section 9 authorizes a hospital district tax to be levied to meet the requirements of (1) debt service on district bonds issued for construction and improvement of hospital facilities and on obligations assumed by the hospital district that were incurred by cities, towns, or a county

within the hospital district before its creation for hospital purposes; and (2) the district's maintenance and operating expenses. *See* TEX. CONST. art. IX, § 9. The article IX, section 9 hospital district tax is expressly authorized to pay debt service on bonds issued by a hospital district for hospital facilities or on hospital purpose obligations assumed by the district. The debt service tax may be levied to make those payments until the bonds and assumed obligations secured by the tax are retired. Thus, the tax may be levied for such purpose as long as the bonds and obligations are outstanding. Accordingly, if bonds and obligations secured by hospital district taxes are outstanding after the closing of a hospital, a hospital district may continue to levy the tax to make the required debt service payments. The contract payments for medical care at issue, however, are not debt service payments on outstanding District bonds or assumed obligations, and we do not understand you to ask about the District's authority to continue levying taxes for debt service.

Besides debt service payments, the hospital district tax is only expressly authorized to pay a *district's maintenance and operating expenses*. *See El Paso County Hosp. Dist. v. Gilbert*, 4 S.W.2d 66, 72 (Tex. App.–El Paso 1999, pet. filed) (hospital district ad valorem tax revenues generated for two enumerated purposes–payment of debt service and payment of maintenance and operation expenses). Consequently, the District may continue to levy the tax and use the proceeds to make the contract payments for medical care only if such purpose is encompassed within "maintenance and operating expenses." Article IX, section 9 does not define these expenses. Nor have we found any Texas cases that do so for the purposes of article IX section 9. Based on the language and purpose of article IX, section 9, however, we conclude that "maintenance and operation expenses" necessarily encompass expenses related to providing medical care to a hospital district's needy residents. *See Republican Party v. Dietz*, 940 S.W.2d 86, 89 (Tex. 1997) (in construing state constitution, effect will be given to its plain language, considering purpose of provision, its historical context, and the collective intent of the framers and people who adopted it).

The tax is authorized for the *district's* maintenance and operating expenses, not those of a *hospital*. Thus it is not limited to maintenance and operation expense of a physical hospital, but instead relates more broadly to the lawful expenses of the hospital district. *Cf.* TEX. TAX CODE ANN. § 26.012(16) (Vernon 1992) ("'Maintenance and operation' means any lawful purpose other than debt service for which a taxing unit may spend property tax revenues.'"); *Gilbert*, 4 S.W.2d at 72 (in discussing hospital district's adopted tax rate, referring to Tax Code section 26.012(16) definition of "maintenance and operation"); *id.* (referring to hospital district "main-tenance and operation fund" as its "general fund").

The most significant lawful hospital district expense is that for indigent medical care. (In this regard we note, that "needy inhabitants" is equivalent to "indigent residents," and we use those terms interchangeably for the purposes of this opinion. *See* Tex. Att'y Gen. Op. No. H-703 (1975) (equating "needy inhabitant" as used in article IX, section 9 to "indigent resident" in article IX, section 4).) Article IX, section 9 was adopted to maintain or improve public health care and facilities, especially for indigent persons and shift the financial burden of providing the care and facilities from cities and counties to hospital districts. TEX. CONST. art. IX, § 9; GEORGE D. BRADEN, THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS, Art.

IX, § 9 *(History and Explanation)*; *see also* Tex. Att'y Gen. Op. No. C-382 *(1965)* at 2 *(primary function of hospital district is furnishing of medical and hospital care for indigent and needy of county and such function takes precedence over all others)*. Thus under this constitutional provision, a hospital district is directed to assume responsibility for providing hospital and medical care to its needy inhabitants; and, moreover, other political subdivisions within the district are prohibited from providing or raising revenues for hospital or medical care once a district is created. *See* TEX. CONST. art. IX, § 9. Because of its absolute duty to provide medical and hospital care for its needy inhabitants, a hospital district is responsible for those medical expenses.[2] *See, e.g.*, Tex. Att'y Gen. Op. Nos. JM-864 (1988), JM-858 (1988), JM-540 (1986), JM-257 (1984), H-703 (1975), M-171 (1967).

The only constitutionally authorized stream of hospital district revenues available to discharge a hospital district's responsibility is the ad valorem property tax levied for maintenance and operating expenses. It must necessarily be available to discharge that responsibility. If it is not, a district cannot carry out its constitutional duty to provide hospital and medical care to its needy inhabitants. And, moreover, no other political entity within the district can provide that care. *See* TEX. CONST. art. IX, § 9. The result would be that no medical care would be or could be provided to the needy residents of all or part of a county. This result, in our opinion, is contrary to the manifest purpose of article IX, section 9 to provide for indigent medical care. *See Dietz*, 940 S.W.2d at 89 *(in construing state constitution, effect will be given to its plain language, considering purpose of provision, its historical context, and the collective intent of the framers and people who adopted it)*. Accordingly, we construe the article IX, section 9 "maintenance and operating expenses" to encompass a hospital district's expenses for providing indigent hospital and medical care. *See id.* This does not, however, end our enquiry. Because the District's powers and duties are also derived from its Enabling Act, we must also examine that act's provision.

The Enabling Act authorizes the District's Board of Directors to levy a tax for the following purposes: (1) paying debt service on "warrants, which may be issued by the hospital district for hospital purposes as herein provided"; (2) providing for operation and maintenance of the *hospital or hospital system*; and (3) for making further improvements and additions to the hospital system and acquiring sites. *See* Act of May 17, 1967, 60th Leg., R.S., ch. 502, § 5(a), 1967 Tex. Gen. Laws 1132, 1134. First, unlike article IX, section 9, the Enabling Act authorizes taxes for debt service on District "warrants" rather than on "bonds"; second, the Enabling Act does not expressly authorize the tax to pay debt service on any obligations issued by the county or city within the district for hospital purposes and assumed by the District; and third, and most important, the Enabling Act authorizes the tax for operation and maintenance expenses of the *hospital or hospital system* rather than of the District. Nonetheless, we construe these provisions consistently with article IX, section 9 and with reference to other provisions in the Enabling Act to authorize a tax for the same purposes as the constitutional provision, for the following reasons.

---

[2] We do not address in this opinion any rights or obligations of nonprofit hospitals in providing indigent health care.

The legislature cannot enact an enabling statute inconsistent with article IX, section 9's provisions regarding the powers and duties of a hospital district. By its own terms, the constitutional provision limits the legislature's authority to do so by providing the purposes for which the legislature may authorize the creation of a hospital district and the purposes for which the legislature may authorize a hospital district tax. *See* TEX. CONST. art. IX, § 9; *see also City of Fort Worth v. Howerton*, 236 S.W.2d 615, 618 (Tex. 1951) (legislature cannot enact any law contrary to constitutional provision).

Additionally, we do not believe the legislature intended to provide powers and duties in the Enabling Act inconsistent with article IX, section 9. Legislative intent is to be determined from the entire act and not simply from isolated portions of the act. *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998); *accord Sayre v. Mullins*, 681 S.W.2d 25, 27 (Tex. 1984) (in determining meaning of statutory language, statute to be read as whole giving consideration to entire act, its nature and object, and consequences that would follow from particular construction). Accordingly, we look at other provisions of the Enabling Act keeping in mind the taxing provisions. First, notwithstanding the authority to levy a tax to pay debt service on "warrants which may be issued by the hospital district for hospital purposes as herein provided," the Enabling Act authorizes the District only to issue "bonds" for hospital purposes. *See* Act of May 17, 1967, 60th Leg., R.S., ch. 502, § 6(a), 1967 Tex. Gen. Laws 1132, 1135. Thus, authority to levy a tax for debt service may be exercised only with respect to District bonds. It would be absurd to read the tax authority to be limited to "warrants," when no warrants can be authorized or issued by the District. Second, notwithstanding the absence of authority to tax for assumed indebtedness, the Enabling Act specifically provides for the District to assume "all outstanding bonds and indebtedness heretofore issued by Garza County and by any city or town within said county for hospital purposes." *Id.* § 2. In fact, the Enabling Act specifically requires the assumption language to be printed on the ballot presented to the District voters for approving the creation of the District. *Id.* If the District is to assume all such obligations, it must pay them; it can do that only if the tax is available for that purpose. Third, while the taxes are authorized for paying maintenance and operation expenses of the *hospital or hospital system*, the Enabling Act expressly provides that the District "shall assume full responsibility for providing medical and hospital care for the needy persons residing within the district[.]" *Id.* § 2. Furthermore, the Enabling Act states that:

> After the hospital district has been organized pursuant to this Act, neither Garza County nor any city therein shall levy any tax for hospital purposes; and such hospital district shall be deemed to have assumed full responsibility for the furnishing of medical and hospital care for the needy and indigent persons residing in said hospital district *from the date that taxes are collected for the hospital district.*

*Id.* § 11 (emphasis added). Again, if the District has the responsibility for indigent medical care, it must pay for it; it can only reasonably do that if the tax is available for that purpose. And, the latter-quoted provision by tying the prohibition against county or city levying a tax to the date the District collects the tax clearly contemplates that the tax will be used to pay for the medical services.

Finally, the Enabling Act provides that the District "shall have the powers and responsibilities provided" by article IX, section 9. *Id.* § 1. By its own terms, provisions of the Enabling Act dealing with the powers and obligations of the District must comport with those in article IX, section 9.

Based on the foregoing construction of article IX, section 9 and the Enabling Act taxing provisions, we conclude that the District's maintenance and operating expense taxes may be levied and used to provide and pay for the District's needy residents' hospital and medical care.

Authority to levy and use the proceeds for the District's needy residents' hospital and medical care is neither limited to nor contingent on ownership or operation of a physical hospital. Clearly, a hospital district may provide hospital and medical care to its indigent residents through its own hospital facility. But it must provide that care even if it does not own or operate a hospital facility. Tex. Att'y Gen. Op. Nos. JM-858 (1988) at 2, JM-864 (1988) at 5-6; *see also* Tex. Att'y Gen. Op. No. DM-37 (1991) at 1. Specifically, a hospital district's closure of its hospital does not relieve the district of its responsibility for providing and paying for the district's indigent residents' medical care. Tex. Att'y Gen. Op. No. JM-864 (1988) at 5-6; *see also* Tex. Att'y Gen. Op. No. DM-37 (1991) at 1. In Attorney General Opinion JM-864, this office advised that:

> *Regardless of the method chosen by the hospital district to provide services to its eligible recipients, the district is liable for the health care services as provided by the constitution and its statute. . . . Thus, the sale, closure, or lease of the Northwest Texas Hospital will have no effect on the legal responsibility that the [City of Amarillo Hospital District] has towards the persons it serves.*

Tex. Att'y Gen. Op. No. JM-864 (1988) at 5-6; *see also* Tex. Att'y Gen. Op. No. DM-37 (1991) at 1 (closure of hospital under section 285.051 of the Health and Safety Code does not relieve hospital district of liability for paying for indigents residents' health care services). Thus, a hospital district must arrange and pay for medical care even when it does not own or operate a hospital.

As Attorney General Opinion JM-864 indicates, a hospital district may fulfill its obligation to provide medical care by various methods. Tex. Att'y Gen. Op. No. JM-864 (1988) at 5. While the District's Enabling Act does not contain any provision expressly authorizing the District to contract for medical care, the Indigent Health Care and Treatment Act, TEX. HEALTH & SAFETY CODE ANN. ch. 61 (Vernon 1992 & Supp. 2000), applicable to the District, does contain such a provision. Under that act, a hospital district may arrange to provide health care services through other public health facilities, through a contract with a private provider, or through the purchase of insurance for eligible residents. *Id.* § 61.056(a) (Vernon 1992); Tex. Att'y Gen. Op. No. JM-864 (1988) (hospital district may use these various methods to provide indigent medical care). The district may also affiliate with other public hospitals, other hospital districts, or a governmental entity to provide regional administration and delivery of health care services. TEX. HEALTH & SAFETY CODE ANN. § 61.056(b) (Vernon 1992); Tex. Att'y Gen. Op. No. JM-858 (1988) at 2 (hospital district may affiliate with another hospital district to provide medical care to needy district

inhabitants). Thus, the District is authorized to provide hospital and medical care to its needy inhabitants through a contract with a private hospital system.

In sum, the District's maintenance and operating expense taxes may be levied and used to pay for needy inhabitants' hospital and medical care expenses after closure of the District's hospital. Because that care may be provided through a contract with a private hospital system, proceeds of the maintenance and operating tax may be used to make payments under that contract.

Finally, we address an issue implicit in your second and fourth questions, namely, whether the District may through its contract with the private hospital system provide medical care to county residents who are not indigent. In other words, may nonindigent Garza County residents be treated in the clinic operated by the private hospital system? Based on the constitutional and statutory scheme for providing hospital and medical care, we conclude that the District may offer medical care to nonindigent Garza County residents provided it collects from these persons the cost of the medical services.

Neither article IX, section 9 nor the Enabling Act specifically authorizes the District to provide medical care to District residents generally or prohibits the district from doing so. Both, however, contain provisions that implicitly contemplate that the District will furnish hospital and medical care to nonindigent District residents. *See* DAVID B. BROOKS, 36 TEXAS PRACTICE: COUNTY AND SPECIAL DISTRICT LAW § 26.28 (1989) (Article IX, section 9 hospital district is authorized, but not required, to provide medical services to nonindigent patients.). Article IX, section 9 requires a hospital district to take over existing hospital facilities owned by a city or county within the hospital district. *See* TEX. CONST. art. IX, § 9. A county hospital established under chapter 263 of the Health and Safety Code (formerly article 4478 of the Texas Revised Civil Statutes), for instance, is "for the care and treatment of *persons* who are sick or injured," *see* TEX. HEALTH & SAFETY CODE ANN. § 263.021(a) (Vernon 1992) (emphasis added), not just indigent county residents. Thus, article IX, section 9 contemplates that a hospital district may continue to provide the services rendered by those facilities. *See* TEX. CONST. art. IX, § 9; Tex. Att'y Gen. Op. No. C-382 (1965) (hospital district taking over county hospital established under article 4478, TEX. REV. CIV. STAT. ANN., takes over all duties and obligations county previously had for care of persons). Additionally, article IX, section 9 prohibits any city or political subdivision in the district from providing *any medical care*, not just indigent medical care. TEX. CONST. art. IX, § 9; *see also* Tex. Att'y Gen. Op. No. JM-1052 (1989) at 6 n.1 (obligation placed on hospital district to assume responsibility for needy resident's medical care is narrower than prohibition on other political subdivision against spending money on medical care generally, not just for indigents). This prohibition in the context of article IX, section 9 can only reasonably be construed as contemplating that the hospital district may offer the requisite medical care because no other political entity may do so. Otherwise, the result of this prohibition would have absurd results. For instance, nonindigent county residents in a rural county-wide hospital district with no private medical care facility might have to travel to another county for hospital care simply because they could pay for the care.

Consistent with the article IX, section 9 provision, the Enabling Act also prohibits Garza County or any city therein from levying taxes for *hospital purposes. See* Act of May 17, 1967, 60th Leg., R.S., ch. 502, § 12, 1967 Tex. Gen. Laws 1132, 1137. Moreover, section 13 of the Enabling Act further provides that:

> *Whenever a patient claiming indigence has been admitted to the facilities of the hospital district,* the directors shall cause inquiry to be made as to his circumstances, and of the relatives of such patients legally liable for his support. *If it is found that such patient or said relatives are liable to pay for his care and treatment in whole or in part,* an order shall be made directing such patient, or said relatives, to pay . . . for the support of such patient a specified sum per week, in proportion to their financial ability, but such sum shall not exceed the actual per capita cost of maintenance. . . . If the agent designated by the district to handle such affairs *finds that such patient or said relatives are not able to pay, either in whole or in part, for his care and treatment in such hospital, the same shall become a charge upon the hospital district.*

*Id.* § 13, 1967 Tex. Gen. Laws at 1137 (emphasis added). This provision clearly contemplates that persons who are able to pay for their medical care may be admitted to the District's hospital and furnished medical care. *See* Tex. Att'y Gen. Op. No. C-382 (1965) at 2.

Looking at provisions similar to the Enabling Act's section 13 and a statutory requirement virtually identical to the article IX, section 9 requirement that a hospital district take over existing county hospital system, Attorney General Opinion C-382 determined that these provisions clearly contemplated that paying patients could be admitted to hospital district facilities. Tex. Att'y Gen. Op. No. C-382 (1965) at 2. Attorney General Opinion C-382 then concluded that a hospital district may admit patients to its facility that are neither needy nor indigents: "[A] patient should not be refused admittance to the hospital facilities simply because he may be able to pay for his care, either in whole or in part." *Id.* The opinion emphasized that "when a patient has been admitted who is fully able to pay, the Administrator may not permit him to pay less than the full and actual cost of his care and maintenance." *Id.*

We believe care provided through the clinic operated by the private hospital system pursuant to a contract with the District here is analogous to the care provided through a hospital district facility. Both the constitutional provision and the Enabling Act contemplate that the District's hospital facilities may serve nonindigents. The clinic serves the same function as did the District's hospital, which presumably admitted nonindigent patients. Accordingly, we conclude that the District may offer medical care to nonindigent county residents through the clinic, provided the District charges those persons the actual cost of the services.

# S U M M A R Y

Garza Hospital District was authorized to close its hospital if the District's Board of Directors determined that closing the hospital was in the best interest of the District's residents and the Board otherwise complied with the statutory procedures. Similarly, the District was authorized to lease its hospital facilities to a private hospital system for the operation of a clinic to provide hospital and medical care to the District's needy inhabitants if the District Board of Directors determined that the lease was in the best interest of the District's residents. Because closure of the hospital does not relieve the District of its responsibility to provide and pay for needy residents' hospital and medical care, the District may continue to levy a tax and use the proceeds to make payments under a contract to provide that care. The District may through this contract offer medical care to nonindigent Garza County residents, provided the District charges those persons the actual cost of the services. The District may not be dissolved pursuant to an election because there is no statutory authority to call and hold a dissolution election with respect to the District.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General - Opinion Committee